998 F.2d 848
 62 Fair Empl.Prac.Cas. (BNA) 681,
62 Empl. Prac. Dec. P 42,459
Deborah C. KENDALL, Plaintiff-Appellant,
v.
James D. WATKINS, Secretary of the Department of Energy of
the United States; Southwestern Power Administration, an
agency of the United States; J.M. Shafer; George Grisaffe;
Richard Morin; and Colin Kelley, Defendants-Appellees.
 No. 92-5160.
 United States Court of Appeals,
Tenth Circuit.
 July 9, 1993.
 
 1
 Thomas L. Bright, Tulsa, OK, for plaintiff-appellant.
 
 
 2
 Tony M. Graham, U.S. Atty., Peter Bernhardt, Asst. U.S. Atty., Tulsa, OK, for defendants-appellees.
 
 
 3
 Before SEYMOUR and TACHA, Circuit Judges, and ROGERS,* Senior District Judge.
 
 
 4
 ROGERS, Senior District Judge.
 
 
 5
 Plaintiff appeals the district court's orders of July 29, 1992, to the extent they (1) struck plaintiff's demand for a jury, (2) entered summary judgment against plaintiff on her Title VII claim, and (3) declined to permit plaintiff to pursue state law discrimination claims under the Federal Tort Claims Act (FTCA). Because we affirm the district court's disposition of plaintiff's Title VII and FTCA claims, we need not address her right to a jury trial.[1]
 
 
 6
 Plaintiff was employed by the Southwestern Power Administration (SWPA), a division of the Department of Energy, from September 1987 until March 1988, when she was terminated while still on probationary status. Plaintiff then filed a claim with the EEOC for discriminatory discharge, which the SWPA settled in August 1989. As part of the settlement, plaintiff agreed to withdraw her complaint from the EEOC and not to institute suit. In return, the SWPA agreed to award plaintiff back pay from the date of her initial termination, to change the designation in her personnel file from "termination" to "resignation," and to reinstate plaintiff effective October 8, 1989. The agreement provided: "Said reinstatement will terminate May 4, 1990. SWPA will have no further obligation to Ms. [Kendall]." Appellant's App., Settlement Agreement, at 161. In accordance with the settlement agreement, plaintiff executed an irrevocable letter of resignation effective May 9, 1990.[2] Shortly after she received her back pay award, plaintiff attempted to revoke her resignation. Her efforts proved fruitless, however, and plaintiff left the SWPA on May 9.
 
 
 7
 In June 1990, plaintiff submitted applications for two openings at the SWPA. The SWPA returned these applications to plaintiff with a cover letter stating:
 
 
 8
 In accordance with the settlement you agreed to dated August 30, 1989, the applications you submitted for vacancy announcements 90-SWPA-10 and 90-SWPA-12 are hereby returned to you. The terms of the agreement state Southwestern Power Administration has no further obligation to you; therefore, any other applications we receive from you will not be considered and will be returned to you.
 
 
 9
 Appellees' Supplemental App., Vol. II, Doc. 33, at 363.
 
 
 10
 Plaintiff then filed suit against Secretary Watkins and a variety of other federal defendants, alleging that the SWPA's refusal to consider her applications for employment constituted sex discrimination and retaliation for her earlier discrimination claim, in violation of Title VII and 42 U.S.C. §§ 1983, 1985, 1986, as well as the Fifth and Fourteenth Amendments to the U.S. Constitution. Plaintiff also alleged claims for intentional infliction of emotional distress and for fraud, deceit, and misrepresentation.
 
 
 11
 Defendants denied plaintiff's claims and filed a series of motions seeking to dismiss all of plaintiff's claims except her Title VII claim, to strike her demand for a jury, to dismiss all defendants except Secretary Watkins, and to enter summary judgment against plaintiff on her Title VII claim. Plaintiff opposed defendants' motions and also moved to amend the complaint. After the court entered the pretrial order, plaintiff retained new counsel, who moved to "simplify" the pretrial order. The district court interpreted the motion to simplify as another attempt to amend the complaint and denied both it and the motion to amend on July 29, 1990.
 
 
 12
 I. The Title VII Claim.
 
 
 13
 We review the district court's entry of summary judgment on plaintiff's Title VII claim de novo, applying the same standard as the district court under Fed.R.Civ.P. 56(c). Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).
 
 
 14
 Once the moving party shows it is entitled to summary judgment, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990).
 
 
 15
 We may affirm the district court's grant of summary judgment " 'on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.' " Griess v. Colorado, 841 F.2d 1042, 1047 (10th Cir.1988) (per curiam) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir.1987)); see also Seibert v. Oklahoma ex rel. Univ. of Okla. Health Sciences Ctr., 867 F.2d 591, 597 (10th Cir.1989).
 
 
 16
 The only portion of her Title VII claim plaintiff pursues on appeal is her contention that, because the SWPA relied on the terms of the settlement agreement to refuse her applications for employment, the SWPA necessarily retaliated against her for filing the original sex discrimination charge and settling that charge. Under the familiar burden-shifting format for Title VII cases established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the plaintiff must first establish a prima facie case. EEOC v. Flasher Co., 986 F.2d 1312, 1316 (10th Cir.1992). To establish a prima facie case of retaliation, a plaintiff must show: "(1) protected opposition to Title VII discrimination or participation in a Title VII proceeding; (2) adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection between such activity and the employer's action." Love v. RE/MAX of Am., Inc., 738 F.2d 383, 385 (10th Cir.1984).
 
 
 17
 Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant "to articulate a reason for [its actions] that is not, on its face, prohibited by Title VII." Flasher, 986 F.2d at 1316 & n. 4. Here, the reason the SWPA articulated for refusing to consider plaintiff's employment applications was that it interpreted the statement in the settlement agreement that the "SWPA will have no further obligation to Ms. [Kendall]" to mean that it did not have to consider plaintiff for future employment at the agency.
 
 
 18
 Plaintiff concedes that the SWPA returned her employment applications based solely on its interpretation of the settlement agreement. She argues, however, that the SWPA's interpretation is wrong, and that it violates Title VII. Plaintiff also appears to contend that because the language on which the SWPA relies is contained in an agreement settling a prior Title VII claim, any reliance on that language necessarily constitutes retaliation in violation of Title VII.
 
 
 19
 We disagree with plaintiff's last contention because it fails to distinguish between the fact of the settlement and the terms of the settlement. If the SWPA refused to consider plaintiff for future employment because she brought a Title VII claim that the agency had to settle, the agency would be in violation of Title VII. See 42 U.S.C. § 2000e-3(a) (stating that an employer may not "discriminate against any ... applicant[ ] for employment ... because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter") (emphasis added). If, however, the agency relied not on the fact that it settled plaintiff's Title VII claim, but on the terms pursuant to which the claim was settled, it did not necessarily violate Title VII.
 
 
 20
 The parties spend much of their time arguing about whether the SWPA's interpretation of the settlement agreement was the correct interpretation. This is not an action for breach of the settlement agreement or to enforce the agreement, however. Therefore, we need not determine whether the SWPA's interpretation of the agreement was correct. Instead, we need only determine whether the agency's interpretation violates Title VII and, therefore, cannot qualify as a legitimate reason for refusing to consider plaintiff's applications for employment.
 
 
 21
 Plaintiff contends that the SWPA's interpretation of the settlement agreement violates Title VII because it constitutes a prospective waiver of unaccrued Title VII rights. The Supreme Court has held that although "an employee may waive his cause of action under Title VII as part of a voluntary settlement," Alexander v. Gardner-Denver Co., 415 U.S. 36, 52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974), "there can be no prospective waiver of an employee's rights under Title VII," id. at 51, 94 S.Ct. at 1021. In other words, an employee may agree to waive Title VII rights that have accrued, but cannot waive rights that have not yet accrued.
 
 
 22
 Plaintiff argues that an interpretation of the settlement agreement that relieves the SWPA of any obligation to consider plaintiff for future employment necessarily waives plaintiff's prospective Title VII rights by depriving plaintiff of a cause of action if the SWPA refuses to consider her for employment based on a reason that violates Title VII, such as plaintiff's sex. We disagree.
 
 
 23
 Even if the SWPA had no obligation to consider plaintiff's employment applications, it could not reject those applications for discriminatory reasons. Cf. Williams v. Meese, 926 F.2d 994, 998 (10th Cir.1991) (holding that although a prisoner "has no right to a job in the prison or to any particular job assignment, prison officials cannot discriminate against him on the basis of his age, race, or handicap, in choosing whether to assign him a job or in choosing what job to assign him") (citation omitted). Therefore, even if the settlement agreement is interpreted to relieve the SWPA of the obligation to consider any of plaintiff's future employment applications, plaintiff can still assert a Title VII claim against the SWPA if it rejects her employment applications for a reason prohibited by Title VII. Because the SWPA's interpretation of the settlement agreement does not effect a waiver of plaintiff's prospective Title VII rights, we conclude the SWPA has met its burden of articulating a reason for not hiring plaintiff that "is not, on its face, prohibited by Title VII," Flasher, 986 F.2d at 1316 n. 4.
 
 
 24
 Once the employer articulates a nondiscriminatory reason for its actions, the employee bears the ultimate burden of proving intentional discrimination. "The plaintiff can prevail either directly by proving that the employer acted with a discriminatory motive or indirectly by showing that the stated reason for the [employer's action] was ... 'a cover-up for a ... discriminatory decision.' " Id. at 1317 (quoting McDonnell Douglas, 411 U.S. at 805, 93 S.Ct. at 1825).
 
 
 25
 Merely showing that the reason articulated by the employer is wrong or unreasonable will not suffice. See Gray v. University of Ark., 883 F.2d 1394, 1401 (8th Cir.1989) ("An employer's articulated reason for [failing to hire] a member of a protected class need not be a sound business reason, or even a fair one.").
 
 
 26
 Because the prima facie case only creates an inference of unlawful discrimination, some evidence that the articulated business reason for the decision was pretextual does not compel the conclusion that the employer intentionally discriminated. If a plaintiff successfully proves that the defendant's reasons are not worthy of credence, the plaintiff must still prove that the true motive for the employment decision violates Title VII.
 
 
 27
 Sanchez v. Philip Morris Inc., 992 F.2d 244, 247 (10th Cir.1993) (citations omitted).
 
 
 28
 Plaintiff did not offer any evidence of sex discrimination or retaliation other than the SWPA's reliance on the terms of the settlement agreement. Although plaintiff argues that the SWPA's interpretation of the settlement agreement was not correct, she concedes that the SWPA refused to hire her based solely on that interpretation. In light of our conclusion that the SWPA's interpretation constituted a nondiscriminatory reason for failing to hire plaintiff, plaintiff's concession amounts to an admission that the SWPA refused to consider her employment applications solely for a nondiscriminatory reason. Therefore, the district court properly entered summary judgment against plaintiff on her Title VII claim.
 
 
 29
 II. The FTCA Claims.
 
 
 30
 Plaintiff contends that the SWPA's refusal to consider her employment applications gave rise to state law claims for discrimination that she may assert against the federal government under the FTCA, and that the district court erred in refusing to permit her to pursue those claims. Specifically, plaintiff argues that although Title VII may preempt any other federal claims she might assert for discrimination in her federal employment, see Brown v. General Servs. Admin., 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976) (holding that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment"), Title VII does not preempt her state law claims for discrimination. We need not reach this preemption issue to decide whether the district court properly disposed of plaintiff's FTCA claims.
 
 
 31
 First, plaintiff did not plead any state law claims for discrimination in her first amended complaint; her discrimination claims were based solely on federal statutory and constitutional grounds. See Appellant's App., Amended Complaint, at 1-4. It appears that plaintiff did not raise any state law claims until she tried to amend her complaint for the second time through her motion to amend and her motion to simplify the pretrial order. See id., Order of July 29, 1992, at 156 & n. 1. The district court denied plaintiff's attempts to amend the complaint on the grounds that (1) she knew of the claims when she filed her initial complaint and her first amended complaint and (2) adding new claims at such a late stage in the proceedings would prejudice defendants. See id. at 156. Plaintiff does not challenge the district court's reliance on these grounds to deny her requests to amend the complaint.
 
 
 32
 Moreover, unless plaintiff first presented her claims to the proper federal agency and that agency finally denied them, the district court would not have had jurisdiction over plaintiff's FTCA claims. See 28 U.S.C. §§ 2401(b), 2675(a); Bradley v. Veterans Admin. ex rel. United States, 951 F.2d 268, 270 (10th Cir.1991) (holding that the requirements of § 2675(a) "are jurisdictional and cannot be waived").
 
 
 33
 Plaintiff asserts that she complied with the FTCA administrative claim requirements by sending a series of letters to Secretary Watkins detailing incidents of sexual harassment and sex discrimination at the SWPA. See Appellees' Supplemental App., Vol. II, Docs. 30, 34, 42. Although one of the letters stated that plaintiff intended to bring suit against the agency and generally outlined the type of relief plaintiff wanted, i.e., reinstatement, back pay, front pay, damages for alleged blacklisting, and disciplinary action against certain federal employees, see id., Doc. 30, none of the letters stated a claim for a sum certain. Because plaintiff did not request a sum certain, she failed to present an adequate claim to the agency. See 28 C.F.R. § 14.2(a) ("For purposes of the provisions of 28 U.S.C. 2401(b), 2672, and 2675, a claim shall be deemed to have been presented when a Federal agency receives from a claimant ... written notification of an incident, accompanied by a claim for money damages in a sum certain for injury ... alleged to have occurred by reason of the incident....") (emphasis added). Therefore, even if the district court had permitted plaintiff to amend her complaint to assert state law discrimination claims against the government under the FTCA, it would not have had jurisdiction to consider those claims. Bradley, 951 F.2d at 270-71 (holding that failure to present claim to agency for sum certain deprives court of jurisdiction over FTCA claim).
 
 
 34
 III. Conclusion.
 
 
 35
 The district court did not err in entering summary judgment against plaintiff on her Title VII claim or in refusing to permit plaintiff to pursue her belated state law discrimination claims under the FTCA. Having ruled that the district court correctly disposed of plaintiff's claims without a trial, we need not determine whether plaintiff would have been entitled to a jury if any of the claims had gone to trial.
 
 
 36
 The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.
 
 
 
 *
 Honorable Richard D. Rogers, United States District Judge for the District of Kansas, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 The evidence showed that plaintiff wanted to continue her employment until May 1990 so she could achieve career civil service status