**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 27 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOE FITZGERALD,

      Plaintiff-Appellant,

v.

LOUIS CALDERA, Secretary of the
United States Department of the Army,

      Defendant-Appellee.

No. 99-5079
(D.C. No. 97-CV-710-EA)
(Northern District of Oklahoma)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**ALARCON**, Senior Circuit Judge.[**]

---

      Although the complaint is apparently not a part of the record on appeal, it appears

that on August 4, 1997, Joe Fitzgerald, ("Fitzgerald"), brought suit in the United States

District Court for the Northern District of Oklahoma against the Department of the Army,

and Togo West, Secretary of the United States Department of the Army, alleging,

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Arthur L. Alarcon, Senior Circuit Judge, United States Court of
Appeals for the Ninth Circuit, sitting by designation.

generally, that he had been unlawfully discharged on June 28, 1996, from his employment by the Department of the Army, Corps of Engineers, as a WY-5426-05 Lock and Dam Operator. Although it, too, is not in the record before us, Fitzgerald apparently filed an amended complaint on February 17, 1998, naming as the only defendant Louis Caldera, Secretary of the Army ("the defendant"), Caldera having succeeded West as Secretary. The defendant, in due time, presumably filed an answer, though such is not in the record before us. Pursuant to agreement of the parties, on July 9, 1998, the case was submitted to a United States Magistrate Judge for resolution, pursuant to 28 U.S.C. § 636(c). Sometime later, on December 7, 1998, Fitzgerald filed a motion for partial summary judgment and on the same date the defendant filed a motion for summary judgment. These motions are in the record on appeal.

On January 20, 1999, the Honorable Claire V. Eagan, a United States Magistrate Judge in the Northern District of Oklahoma, by published opinion granted defendant's motion for summary judgment and denied Fitzgerald's motion for partial summary judgment. *Fitzgerald v. Caldera,* 34 F. Supp. 2d 1299 (N.D. Okla. 1999). In so doing, the judge concluded, *inter alia,* that Fitzgerald was not a "disabled person" under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.,* nor was his discharge based on any such disability, and that, alternatively, even if Fitzgerald had made a *prima facie* showing on both matters, the defendant had articulated a legitimate business reason for terminating him which was non-pretextual. Judgment for the defendant was duly entered on February

11, 1999.  Notice of appeal was timely filed.

We do not propose to recite a detailed chronology leading up to Fitzgerald's termination on June 28, 1996.  Such is fully set forth in the magistrate judge's published order and opinion.  We would only note that Fitzgerald was originally employed by the defendant as a park ranger in 1978 and that in 1987 he became a lock and dam operator at Chouteau Lock and Dam, Number 17, on the McClellan-Kerr Arkansas River Navigation System.  As a lock and dam operator, Fitzgerald was responsible for operating gates to allow shipping to pass through the lock and for maintaining safety and security at the lock.  There is no dispute that on October 12, 1994, Fitzgerald brought, "inadvertently" he said, a marijuana pipe and a small quantity of marijuana on his person into the defendant's work place.  As a result of defendant's discovery that on October 12, 1994, Fitzgerald  brought a marijuana pipe and marijuana onto the work place, and after an investigation of that incident, Fitzgerald, pursuant to a warrant, was arrested by the local sheriff on January 17, 1995 in the defendant's parking lot when he arrived for work.  With his consent, the sheriff searched the automobile Fitzgerald was driving.  The ensuing search disclosed three vials which it was later determined contained methamphetamine, although, initially, it was thought that perhaps two of the vials contained cocaine.  Fitzgerald stated he did not "know" that there was methamphetamine in his car.  Fitzgerald was later charged in a state criminal proceeding with the possession of a controlled substance, to which charge Fitzgerald pled *nolo contendere.*  On February

20, 1996, the Corps of Engineers issued a second proposal to remove Fitzgerald from federal employment for introducing and possessing marijuana and a marijuana pipe while in a duty status on government property at a government facility and for introducing and possessing methamphetamine on government property at the facility.[1] On June 28, 1996, Fitzgerald was "removed" from his employment with the defendant by Larry Hogue, Chief of the Operations Division for the Corps. The reader of this order and judgment is referred to the order and opinion of the magistrate judge for further background regarding this controversy, which has now been going on for some six years.

The magistrate judge carefully considered all of the numerous contentions of the parties and held, in the first instance, that Fitzgerald had failed to make a *prima facie* showing that he had a claim for disability discrimination under the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.* In particular, the judge concluded that Fitzgerald was not "disabled" under the Act. Further, the judge also found that Fitzgerald had failed to show that he was removed or terminated because of his claimed disability. In this regard the judge observed that Fitzgerald was discharged because of "misconduct," i.e., bringing drugs onto the government work place, not because of any "chemical dependency." However, the judge then went on to hold that even if Fitzgerald had established a *prima facie* case of disability within the provisions of the Rehabilitation Act of 1973, the

---

[1]A prior proposal to remove had been withdrawn by the Corps when it was ascertained that all three vials found in Fitzgerald's automobile on January 17, 1995 contained methamphetamine, and that there was no cocaine.

defendant had articulated a legitimate, non-discriminatory reason for the removal decision which reason Fitzgerald had failed to show was "pretextual." In this connection, plaintiff must first establish a *prima facie* case before the burden shifts to defendant to show a non-discriminatory reason for its action, after which plaintiff may attempt to show defendant's proffered reason was pretextual. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-804 (1973); *Williams v. Widnall,* 79 F.3d 1003, 1007 n.3 (10th Cir. 1996).

In this court counsel suggests that there are two issues to be resolved: (1) was Fitzgerald a qualified disabled person, and (2) was he terminated because of his disability? As indicated, the magistrate judge answered both of these questions in the negative. We are not in any particular disagreement with the judge's disposition of those matters, though we elect to resolve this appeal on the judge's alternative holding that even if Fitzgerald had made a *prima facie* showing of discrimination under the Rehabilitation Act of 1973, the defendant had articulated a legitimate business reason for terminating him which reason was non-pretextual. In this connection, the reason advanced by the defendant for terminating Fitzgerald was the defendant's "loss of trust" in Fitzgerald based on the fact that he had on two occasions introduced drugs into the workplace in violation of state and federal laws and agency regulations. According to the defendant, such created a "safety risk" inasmuch as Fitzgerald's duties included allowing ships in and out of locks which involved the use of equipment and machinery costing millions of

dollars.  Specifically, Larry Hogue, Chief of the Operations Division for the Corps, in terminating Fitzgerald spoke as follows:

> Moreover, the responsibility of lock and dam operators is significant and the risk associated with errors made by them are equally significant.  Your position as an operator demands a high degree of trust.  Bringing illegal drugs to the work site on two occasions within approximately three months is flagrant and a disregard for the responsibilities expected of a lock operator.  As stated by Mr. Johnson, it would be irresponsible to have you work as a lock operator.

Regulations of the Corps of Engineers, under the heading "Unauthorized use or possession of a controlled substance," provide that the penalty for "Introduction of controlled substances to a work area or government installation for personal use," on a first offense, ranges from a 3-day suspension to removal.  Another regulation of the Tulsa district of the Corps provided as follows:

> 4.  POLICY.  The policy of the Tulsa District is:
>
> a.  To provide assistance to employees and immediate family members in resolving personal, behavioral and medical problems that adversely affect employee job performance.
>
> b.  That mental and emotional disorders, alcoholism or drug abuse are recognized as treatable health problems.
>
> c.  That employees who suffer from mental or emotional disorders, or health problems resulting from the abuse of alcohol or drugs should receive the same careful consideration and offer of assistance that is presently extended to employees having any other illness or health problem which adversely affects job performance.

d. When problems arise on the job as a result of an employee's emotional or behavioral disorders or abuse of drugs, managers will utilize nondisciplinary procedures under which the employee will first be offered rehabilitative assistance.

Many matters presented to the magistrate judge, and ruled on by the judge, are not urged in this appeal. In this Court, Fitzgerald's "Summary of Argument" reads in its entirety, as follows:

The issue in this case centers upon plaintiff's complaint of disability discrimination under the Rehabilitation Act of 1973. Plaintiff would urge that as a prior drug abuser he was entitled to the protection of the Rehabilitation Act. Plaintiff would urge that at the time of his discharge he was not a "current user" of illegal drugs. Further, plaintiff would urge that summary judgment should not have been entered on the issue of whether defendant discharged plaintiff because of his disability.

As we read Fitzgerald's brief in this court, there is no challenge, as such, to the judge's alternative holding that defendant had articulated a legitimate business reason for discharge, which Fitzgerald had not shown to be pretextual. We believe the record supports the judge's holding on the "pretext" question and on that basis we affirm. *U.S. v. Anderson,* 154 F.3d 1225, 1229 (10th Cir. 1998); *U.S. v. Winningham,* 140 F.3d 1328, 1332 (10th Cir. 1998).

The regulations of the defendant above set forth deserve comment. However, at the outset it should be remembered that this action is designed to bring Fitzgerald within

the purview of the Rehabilitation Act of 1973. It is not a breach of employment contract case. However, in connection with his contention that Fitzgerald had shown, *prima facie*, that the defendant had discriminated against him because of his disability, or at least a "perceived" disability, counsel argues that the fact that defendant discharged Fitzgerald when, under the regulations, he could have imposed a 3-day suspension, is circumstantial evidence of discriminatory intent. In thus arguing, counsel recognizes that under the regulations the penalty for even a first offense of bringing drugs onto the workplace ranges from a 3-day suspension to outright removal. In our view, the fact that the Corps determined to remove Fitzgerald, rather than impose a 3-day suspension, or impose a penalty somewhere in between, is slight circumstantial evidence, if any, of discriminatory intent.[2]

In like fashion, counsel argues that under its regulations defendant was required to "utilize non-discriminatory procedures under which the employee will first be offered rehabilitative assistance," rather than to discharge him, even though another regulation authorized removal for the bringing of drugs onto the workplace. Again this is not a breach of contract case, and such is only the slightest evidence, in our view, of a discriminatory intent. In this regard it should be noted that Fitzgerald some time after his arrest sought professional help on his own.

---

[2]Actually, Fitzgerald brought drugs into the workplace on two occasions, and, under the regulations, the only penalty on a second offense is removal.

The judge recognized, and it merits repeating, that this is a case where the employee was discharged because of on-the-job misconduct, and that Fitzgerald was not discharged because of any use of drugs. Counsel says this is a distinction without any real difference. We do not agree, though of course there is some relationship between the two. In this regard, in *Nielsen v. Moroni Feed Co.*, 162 F.3d 604 (10th Cir. 1998), we said that "unsatisfactory conduct caused by alcoholism and illegal drug use does not receive protection under the ADA or the Rehabilitation Act," noting, however, that the "mere status of being an alcoholic or illegal drug user may merit such protection." *Id.* at 609. The court went on to observe that "while the mere status of being an illegal drug user may invoke protection under the ADA, that protection does not extend to those 'currently engaging in the illegal use of drugs.'" *Id., see also* 29 U.S.C. § 705(C)(i).

In like fashion, in *Williams v. Widnall*, 79 F.3d 1003, 1007 (10th Cir. 1996) we held that an employer subject to the Rehabilitation Act of 1973 may terminate its employee because of egregious misconduct irrespective of whether he is, under the Act, handicapped. In the same case we quoted with approval the following: "the Act does not protect alcoholics or drug addicts from the consequences of their misconduct," citing *Little v. FBI*, 1 F.3d 255, 258 (4th Cir. 1993).

In sum, the record supports the magistrate judge's holding that the defendant had articulated a legitimate business reason for discharging Fitzgerald and that Fitzgerald had

not made a sufficient showing that such reason was pretextual.[3]

       Judgment affirmed.


                    Entered for the court,

                    Robert H. McWilliams
                    Senior Circuit Judge

---

[3] In *Kendall v. Watkins*, 998 F.2d 848, 851 (10th Cir. 1993) we stated that a "mere showing" by an employee that his employer's articulated reason for adverse employment action was "wrong" or "unreasonable," and not a "sound business reason" or even a "fair one," does not prove intentional discrimination, citing *Gray v. University of Arkansas*, 883 F.2d 1394, 1401 (8th Cir. 1989). In *Gray*, the Eighth Circuit said "An employer's articulated reason for terminating a member of a protected class need not be a sound business reason, or even a fair one." *Id*. at 1401.