**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 19, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

KAREN A. JENCKS,

      Plaintiff - Appellant,

v.

No. 05-5130

MODERN WOODMEN OF
AMERICA, an Insurer,

      Defendant - Appellee.

---

**Appeal from the United States District Court**
**for the District of Northern District of Oklahoma**
**(D.C. No. CV-481-TCK)**

---

Steven R. Hickman of Frasier, Frasier & Hickman LLP, Tulsa, Oklahoma, for
Plaintiff - Appellant

Shelly L. Dalrymple of Eldridge, Cooper, Steichen & Leach PLLC (Kathy R. Neal
with her on the briefs), Tulsa, Oklahoma, for Defendant - Appellee.

---

Before **LUCERO, EBEL** and **O'BRIEN**, Circuit Judges.

---

**O'Brien**, Circuit Judge.

---

      Seven years after Karen Jencks won a Title VII claim against her employer,

Modern Woodmen of America (MWA), she again brought suit against MWA. Her

second lawsuit alleges she was denied an opportunity with the company in retaliation for her earlier victory. The district court granted summary judgment in favor of MWA. Jencks appealed. We affirm.

## Background

MWA, an insurance company, employed Jencks in 1990 as a district manager.[1] In 1994, she was terminated from that position and offered a contract as a district representative, a sales agent position. She accepted the demotion. Due to on-going problems with her production, she was terminated from the district representative position but was offered a district agent contract. This, she did not accept. She filed a claim with the EEOC, alleging discriminatory demotion (from district manager to district representative) and discharge (from the district representative position). She then sued MWA, adding claims of sexual harassment, retaliation and racial discrimination. The court granted summary judgment as to all claims relative to Jencks' termination because the district representative position was that of an independent contractor, not an employee. The claim of sexual discrimination in the demotion from district manager to district representative proceeded to trial. Jencks prevailed and the court ordered her reinstated to the district manager position. Jencks and MWA

---

[1] As district manager, Jencks was an employee of MWA. However, all other positions involved in this case are independent contractor positions. The parties are careful to distinguish these positions. MWA in particular is very precise in referring to Jencks' relationship with it - both in the past and in this case - as an "affiliation" and not employment.

then entered into a Mutual, General, and Complete Release (the "Settlement Agreement") in which, among other things, Jencks waived any entitlement to re-employment or reinstatement with MWA.

In December 2002, Jencks began receiving letters from MWA, soliciting her to apply for a sales agent position. MWA contends these were simply form letters sent to all licensed insurance agents in the area. In May 2003, Jencks went to MWA's local office and met with Grady Hurst, MWA's State manager and her former supervisor, to apply for the sales agent position. Hurst told her because of the Settlement Agreement and her "history" with the company, any decision regarding her application would be made by the corporate office. Several days later, Jencks received a letter from Deborah Smiley, the manager of the Agency Contract Department, stating Jencks would not be offered a sales agent contract. The rejection letter cited insufficient sales numbers during her previous employment with MWA and the terms of the Settlement Agreement.

Jencks filed complaints with the Oklahoma Human Rights Commission (OHRC) and the EEOC, alleging she was not offered a contract in retaliation for filing the previous lawsuit. Both agencies ruled Jencks lacked standing to file a complaint; the OHRC explained the lack of standing was because the position she applied for was as an independent contractor, to which Title VII did not apply.

On June 15, 2004, Jencks filed a complaint in district court, alleging illegal retaliatory conduct by MWA. MWA filed a motion to dismiss, asserting the court

lacked subject matter jurisdiction because the sales agent position was an independent contractor position to which the protections of Title VII did not apply. In response, Jencks argued the previous lawsuit determined she was demoted from an employee position and as a former employee, she had standing to bring a retaliation claim. In reply, MWA filed the Settlement Agreement.

On March 16, 2005, the district court informed the parties MWA's motion to dismiss would be converted to a motion for summary judgment. It ordered Jencks to respond and granted MWA leave to reply.[2] Jencks responded, reiterating her contention that as a former employee she had standing under Title VII, the Settlement Agreement did not negate her claim, and she had made a prima facie case of retaliation. Attached to her response was her statement signed "under penalty of perjury" and copies of the solicitation letters. (Aplt's App., Vol. I at 86.) In reply, MWA argued Jencks had not set forth a prima facie case of retaliation, and reiterated its position that the Settlement Agreement was a legitimate, non-discriminatory reason supporting its refusal to re-affiliate with Jencks. MWA also contended the solicitation letters were sent to Jencks as part of a bulk mail solicitation, attaching Smiley's affidavit in support.

---

[2]"When subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case, the jurisdictional claim and the merits are considered to be intertwined," and when both parties submit evidence beyond the pleadings, a motion to dismiss is properly characterized as one for summary judgment. *Trainor v. Apollo Metal Specialities, Inc.*, 318 F.3d 976, 978 (10th Cir. 2002).

On July 7, the district court granted summary judgment for MWA concluding Jencks "cannot establish the necessary inference of discriminatory motive which is essential to [her] prima facie case." (R. Vol. I at 116.) In the alternative, the court concluded: "Even if [Jencks] could show a prima facie case of discrimination, the Settlement Agreement was a legitimate non-discriminatory reason for refusing to hire [her]. Pursuant to the Settlement Agreement, [Jencks] waived her right to any future employment with [MWA] and thus [MWA] had a legitimate non-discriminatory reason" for declining [Jenck's] application. (*Id.*) Judgment was entered on August 3, 2005; Jencks filed her notice of appeal the next day.

## Discussion

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Simms v. Okla. ex rel. Dep't of Mental Health*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms,* 165 F.3d at 1326.

The nonmoving party "must identify sufficient evidence which would

-5-

require submission of the case to a jury." *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir. 1992). Where the nonmoving party bears the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury. *Id.*

> In determining whether to grant summary judgment on a Title VII claim, we apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this approach, the plaintiff initially bears the burden of production to establish a prima facie case of a Title VII violation . . . . If the defendant provides a nondiscriminatory reason for the employment action, the plaintiff may defeat summary judgment by presenting sufficient evidence such that a reasonable jury could conclude that the proffered nondiscriminatory reason for the employment action is pretextual, that is, "unworthy of belief."

*Simms*, 165 F.3d at 1328 (citations omitted).

A.    Standing

At the outset we must decide whether Jencks has standing to bring a Title VII action against MWA. Title VII's anti-retaliation provision provides in relevant part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge . . . under this subchapter." 42 U.S.C. § 2000e-3(a).

As a remedial statute, Title VII must be liberally construed to bring *former* employees within its protections. *Rutherford v. Amer. Bank of Commerce*, 565

F.2d 1162, 1165-66 (10th Cir. 1977); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986 (10th Cir. 1996); *see also Robinson v. Shell Oil*, 519 U.S. 337, 346 (1997) (Title VII § 704(a) includes former employees within its coverage.) The record reflects Jencks' former position - the one from which she was demoted and for which she successfully brought a Title VII action - was that of an employee. Consequently, the district court correctly held Jencks was a "former employee" and had standing to bring a retaliation claim against her former employer. *Trujillo v. Univ. of Colo. Health Scis. Ctr.*, 157 F.3d 1211, 1215 (10th Cir. 1998).

B.      Prima Facie Case of Retaliation

At the time this case was decided by the district court, a plaintiff had to show three elements to establish a prima facie case of retaliation: "(1) protected employee action; (2) adverse action by an employer either after or contemporaneous with the employee's protected action; and (3) a causal connection between the employee's action and the employer's adverse action." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *see also Berry,* 74 F.3d at 985. Recently the Supreme Court explained the "adverse employment action" standard is not restricted to acts and harm occurring in the workplace or related to employment. *Burlington N. & Santa Fe Ry. Co. v. White*, --- U.S. ---, 126 S.Ct. 2405, 2409 (2006). But the employer's action must be real and significant. "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 2414.

-7-

"[T]he provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Id*. at 2409. A "materially adverse" act is one that well might dissuade a reasonable worker from making a discrimination complaint. *Id*. at 2415.[3]

"In the summary judgment context, a plaintiff initially must raise a genuine issue of material fact on each element of the prima facie case." *Morgan,* 108 F.3d at 1323. The parties do not dispute that Jencks' previous litigation was a protected action. Thus, we direct our attention to the claimed retaliatory act. *Burlington Northern*, 126 S.Ct. at 2416 ("[T]he standard is tied to the challenged retaliatory act, not the underlying conduct that form[ed] the basis of the Title VII [discrimination] complaint.")

### 1) Nature of the claimed retaliatory act

Jencks maintains MWA's refusal to offer her a sales agent contract constituted an adverse employment action. Relying on *Berry*, MWA contends its refusal to enter into an independent contractor relationship with Jencks does not constitute an adverse employment action because it did not impact Jencks' future employment prospects. The district court did not directly address MWA's

---

[3] After *Burlington Northern*, "[t]o establish a prima facie case of retaliation, a plaintiff must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006) (citing *Burlington Northern*, 126 S.Ct. at 2414-15).

-8-

contention on this point. It simply stated "whether there was an adverse employment action is not in question," citing 42 U.S.C. § 2000e-2(a) for the proposition that a refusal to hire is an adverse employment action. (Aplt's App., Vol. I at 114, n.3.)

These various positions must be considered in light of the Court's decision in *Burlington Northern*. Under its holding regarding the scope of the anti-retaliation provisions of Title VII, MWA's argument — that only acts impacting employment prospects are proscribed — is certainly wrong. *Id.* at 1209. Turning to the district court's conclusion that an adverse employment action is not an issue in this case, the "materially adverse" standard articulated in *Burlington Northern*, at the very least, favors a more robust debate on that issue.

We must consider whether MWA's refusal to consider Jencks for a contract position was *materially* adverse to her interests. *Burlington Northern*, 126 S.Ct. at 2415. "[I]t is important to separate significant from trivial harms." *Id.* The settlement agreement negotiated in Jencks discrimination case is critical to that determination. If, as the district court decided, the settlement agreement foreclosed Jencks from all forms of future employment related opportunities with MWA, including work as an independent contractor, MWA's refusal to consider her application is not a significant event. Jencks may have been annoyed, frustrated or disappointed, but holding her to the terms of a fairly negotiated settlement agreement is not a harm. As the Supreme Court noted, "the

significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id*.

Under the district court's construction of the settlement agreement, a *reasonable* worker — the objective standard set forth in *Burlington Northern* — could not have considered MWA's action to be materially adverse.

> By focusing on the materiality of the challenged action and the perspective of a reasonable person in the plaintiff's position, we believe this standard will screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination.

*Id.* at 2416.

On the other hand, Jencks claims the settlement agreement only precluded her from re-employment as opposed to an independent contractor position. Therefore, MWA's failure to consider her application was not justified by the Settlement Agreement, and not only was it wrong, it was retaliatory as well. If MWA erred in interpreting the contract and did so with retaliatory intent its acts may well have been materially adverse (sufficient to dissuade a reasonable worker from making or supporting a discrimination charge).

Construction of a contract is an issue for the court, which we review de novo. *Deepwater Invs., Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1106 (10th Cir. 1991). But we need not undertake that review in this case. The district court did not resolve the contract issue in order to determine whether Jencks had suffered a materially adverse act at the hands of a former employer. Instead, it

ultimately concluded, even if a prima facie case of retaliation had been made, MWA presented a legitimate, non-discriminatory reason for its acts which Jencks failed to rebut with a sufficient showing of pretext. Because we agree with the district court's ultimate decision, as discussed below, we need not resolve other issues.

C.      Legitimate, Non-discriminatory Reason

Assuming, without deciding, Jencks established her prima facie case, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action." *Berry*, 74 F.3d at 986. MWA contends it was entitled to rely on the 1997 Settlement Agreement in refusing to offer Jencks a sales agent contract because the terms of the agreement waived Jencks' right to all future reinstatement or re-employment with MWA. Relying on *Kendall v. Watkins*, 998 F.2d 848 (10th Cir. 1993), the district court concluded the Settlement Agreement was a "legitimate non-discriminatory reason for declining [Jencks'] application." (Aplt's App., Vol. I at 116.)

In *Kendall*, the employer refused to re-hire a former employee under the terms of a settlement agreement entered into after the employee's earlier discrimination complaint. We noted it was important to distinguish between the *fact* of the settlement and its *terms*:

> If the [employer] refused to consider plaintiff for future employment
> because she brought a Title VII claim that the agency had to settle,
> the agency would be in violation of Title VII. If, however, the

agency relied not on the fact that it settled plaintiff's Title VII claim, but on the terms pursuant to which the claim was settled, it did not *necessarily* violate Title VII. *Id.* at 851.

As in *Kendall*, MWA's interpretation and reliance on the terms of the Settlement Agreement does not itself violate Title VII and can serve as a legitimate, nondiscriminatory reason for MWA's actions. *Kendall*, 998 F.2d at 851. Our holding in this regard is narrow. We do not imply that MWA was correct in its interpretation of and reliance on the Settlement Agreement, only that its stated reason was "facially non-discriminatory" and thus sufficient to satisfy its burden in establishing a legitimate, non-discriminatory reason for its decision.[4] *Staghound v. Safeway, Inc.*, 337 F.3d 1213, 1218 (10th Cir. 2003).

Jencks argues the terms of the Settlement Agreement are inapplicable because she was not seeking *reinstatement* to her previous position as district manager. She also claims she was not seeking *re-employment* but affiliation as an independent contractor. Therefore, she contends MWA's reliance on the Settlement Agreement was pretextual and its real reason for not offering her a sales agent contract was because she previously sued MWA under Title VII. As we discuss next, Jencks offered insufficient evidence to demonstrate MWA's reliance on the Settlement Agreement was pretextual.

---

[4] As we noted in *Burrus v. United Telephone Company*, "The defendant need not prove the absence of retaliatory motive, but only produce evidence that would dispel the inference of retaliation by establishing the existence of a legitimate reason." 683 F.2d 339, 343 (10th Cir. 1982) (quotations and citations omitted).

D.    Pretext

Once an employer presents a legitimate, non-discriminatory reason for its conduct, the burden shifts back to the plaintiff to demonstrate the reason is "a pretext for its discriminatory intentions.  A plaintiff demonstrates pretext by showing either that a discriminatory reason more likely motivated the employer or that the employer's proffered explanation is unworthy of credence." *Staghound*, 337 F.3d at 1218 (quotations and citations omitted); *see Cone v. Longmont United Hosp. Assen*, 14 F.3d 526, 530 (10th Cir. 1994).  This can be done in several ways.  *Centrex v. Pense Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000).

> Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.

*Morgan,* 108 F.3d at 1323 (internal quotations and citations omitted).

"Even though all doubts concerning pretext must be resolved in plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgment." *Morgan*, 108 F.3d at 1324.  "Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999); *see Pains v. Mission Hills Bank*, 60 F.3d 1486, 1491 (10th Cir. 1995).

-13-

In this case, once MWA set forth a non-discriminatory reason for not offering Jencks a contract — its reliance on the terms of the Settlement Agreement — Jencks "had the burden to persuade the district court that [MWA's] reason was unworthy of belief and a pretext to cover up discriminatory motives." *Pains*, 60 F.3d at 1491. In attempting to meet this burden, she relies primarily on her conversation with Hurst and the contents of the rejection letter. She argues (1) her earlier promotion within MWA infers at least satisfactory performance, (2) even when demoted MWA continued to offer her the same position she currently pursued, and (3) her satisfactory post-discrimination production with another company negates MWA's "past production" rationale for its refusal to contract. She also claims MWA's interpretation of the Settlement Agreement involves "a tortured reading" of its terms. (Appellant's Br. at 15.) In addition, she offers her belief, based on her prior experience with MWA, that hiring decisions were made by the state manager, not at the corporate level. This evidence is insufficient, as it "presents nothing which would cause a reasonable finder of fact to determine that the reason [was] unworthy of belief." *Anderson*, 181 F.3d at 1180.

While Jencks' argument relating to her past performance may have carried the day if MWA had relied solely on this rationale, it is inadequate in light of MWA's dual reasons for its decision. On the record before us, Jencks' conclusory statements regarding her past performance do not create an inference that MWA's reference to performance issues were pretextual. She concedes that,

for whatever reasons, her performance while employed by MWA deteriorated. More importantly, MWA's interpretation of the Settlement Agreement is not "tortured." Rather, it is one way to reasonably read the contractual terms. Hurst's ruminations about Jencks' history and his hurt feelings are immaterial as he was not the decision-maker in this case and nothing of record indicates he influenced the decision in any way. *See EEOC v. BAI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 487 (10th Cir. 2006) ("To prevail on a subordinate bias claim, a plaintiff must establish more than mere "influence" or "input" in the decision making process. Rather, the issue is whether the biased subordinate's discriminatory reports, recommendation, or other actions caused the adverse employment action.") (citation omitted). Jencks' statement about hiring decisions being made by the state manager is dated and, in any event, the Settlement Agreement makes her application for a contractual position unique. In sum, Jencks fails to point to facts which would allow a reasonable fact-finder to infer MWA did not rely on the terms of the Settlement Agreement in making its decision to reject Jencks' application.

E. Consideration of Evidence

Finally, we turn to Jencks' contention the district court improperly relied on new materials in granting summary judgment for MWA. In accordance with the district court's March 16, 2005 order, MWA filed a reply reiterating its argument about standing, arguing Jencks had not established a prima facie case of

retaliation, and asserting it relied on the provisions of the Settlement Agreement (filed with the court some nine months earlier) in not offering Jencks a sales agent contract. MWA also submitted Smiley's affidavit and a copy of the rejection letter.

Jencks argues the district court improperly relied on these materials and she could not respond to MWA's "new" assertions. Her argument that MWA's reply and exhibits were "new" is disingenuous. She filed the Title VII suit against MWA and was well aware of her burden of proof, evidenced in part by her response to the March 16, 2005 order acknowledging the elements of a retaliation claim and arguing she had made a prima facie case of retaliation. She discussed her conversation with Hurst, the referral of her application to the corporate office, the Settlement Agreement, and MWA's reliance upon it in refusing to offer her a contract. MWA's reply did not "advance[] . . . **new** reasons" for its actions. *Baird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1164 (10th Cir. 1998) (emphasis added).

We have held a nonmoving party should be given an opportunity to respond to new arguments set forth in a motion for summary judgment:

> Thus, when a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond. However, if the district court grants summary judgment for the movant without relying on the new materials and arguments in the movant's reply brief, it does not abuse its discretion by precluding a surely.

-16-

*Id*. at 115-65 (citation omitted).

In this case, Jencks never requested an opportunity to respond nor was she deprived of an opportunity to argue the issues upon which the district court based its summary judgment ruling.

AFFIRMED.