**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 16, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

AARONETTE ALLEN,

      Plaintiff-Appellant,

v.

SULZER CHEMTECH USA, INC.,

      Defendant-Appellee.

No. 07-5148
(D.C. No. 4:04-CV-00748-GKF-PJC)
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

---

Aaronette Allen sued her former employer, Sulzer Chemtech USA, Inc.,

(Sulzer) for alleged violations of the Equal Pay Act (EPA), 29 U.S.C. § 206(d),

and Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e to 2000e-17. The

district court granted summary judgment in favor of Sulzer, but Ms. Allen

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

appealed, arguing that the evidence weighed in favor of her equal pay, disparate treatment, and retaliation claims.  We affirm the district court's judgment.

**I**

Sulzer hired Ms. Allen as a welder in January of 2002 and fired her in December of the same year.  She was the sole female welder and one of only three women at the company's Tulsa, Oklahoma facility.  In July, Ms. Allen contacted the director of human resources, Michelle Downes, to obtain the phone number for the company's Action Line.  She believed that a male employee who was less competent and less qualified was being paid more and had been given a supervisory role over her, and she wished to report it.  Ms. Downes asked if there was anything she wished to discuss, but Ms. Allen declined to share her concerns.  After obtaining the number and calling the Action Line, Ms. Allen went on medical leave.  When she returned eleven days later, she was reprimanded for not directly reporting her absence to her supervisor.  Rumors concerning why she called the Action Line were also circulating throughout the shop.

Ms. Allen subsequently contacted Ms. Downes and revealed her frustration with the selection of the male employee for the supervisory position because she had more experience than him.  She later met with Ms. Downes and requested to be transferred away from the "politics" in the shop.  Aplt. Br. at 13.  She also complained that she was being assigned unfavorable tasks and alleged that she was being unfairly targeted for attendance violations in reprisal for having

requested the number to the Action Line. Ms. Downes investigated these allegations but found that Ms. Allen was being treated like every other employee. She discovered, however, that Ms. Allen had exhausted all her vacation and sick leave but continued to be absent or late.

After receiving two more written reprimands for being absent or tardy on six different occasions, Ms. Allen notified her supervisors that she would need additional time off to attend her deposition in another legal matter: she had been subpoenaed by a previous employer against whom she filed similar Title VII charges, but was concerned about her attendance. Her supervisors acknowledged her proposed absence but later faulted her for being gone. Meanwhile, the company implemented mandatory overtime, which she missed, resulting in yet another unexcused absence. And when she was absent two days later, on November 18, Sulzer sanctioned her with a three-day suspension. The company warned her at that time that her next absence would result in termination. Accordingly, when she failed to report to work on December 4, Sulzer fired her.

Ms. Allen filed a claim with the Equal Employment Opportunity Commission (EEOC) and then a complaint in the district court. Although her complaint alleged only violations of the EPA and retaliation under Title VII, her EEOC charge also contained a disparate treatment claim based on gender discrimination. Sulzer moved for summary judgment on all claims, and the district court, ruling from the bench, granted the motion. Now before this court,

Ms. Allen maintains that she was paid less than her male co-workers, was discriminated against on account of her gender, and was terminated in retaliation for calling Sulzer's Action Line.

## II

We review the grant of summary judgment de novo, applying the same standard as the district court. *See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1220 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We determine whether summary judgment was appropriate by viewing "all the evidence and draw[ing] all reasonable inferences in favor of the nonmoving party." *Etsitty*, 502 F.3d at 1220.

### A. Equal Pay Act

We first consider Ms. Allen's EPA claim, which requires that she establish: "(1) she was performing work which was substantially equal to that of the male employees considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; [and] (3) the male employees were paid more under such circumstances." *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1364 (10th Cir. 1997) (quotation omitted). If Ms. Allen makes this prima facie showing, Sulzer must demonstrate

that there were valid reasons for the pay difference, such as its maintenance of "'(I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" *Id.* (quoting 29 U.S.C. § 206(d)(1)). If Sulzer fails to meet its burden, Ms. Allen will have successfully shown an EPA violation.

Ms. Allen was doing substantially equal work as the male welders, under substantially the same conditions, but was paid less than most of them. She thus satisfies her burden. Sulzer defeats this prima facie showing, however, because the evidence demonstrates that men who were paid more received shift differentials or had greater seniority. Indeed, Ms. Allen was earning $13.00 hourly working the first shift. Sulzer's 2002 pay rates show that the two other welders who were hired in 2002 were earning $13.50 per hour. But these men were earning an extra $.50 per hour because they worked the second and third shifts and were compensated with a shift differential. Ms. Allen contends that one of these men was paid $14.00 per hour, but her only evidence is her own stricken deposition testimony. *See* Aplt. App., Vol. II at 686.[1]

---

[1]  We note that the majority of appellant's appendix is comprised of exhibits that were stricken by the district court. We also note that Ms. Allen's opening brief is plagued with vague references to the appendix. Appellant's counsel is cautioned that failure to provide specific, valid citations to the record to support each allegation of reversible error risks summary dismissal of the appeal. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1540 n.3 (10th Cir. 1996).

As for the other four men who earned more, they were all senior welders. Ms. Allen insists that seniority was not a basis for paying more money, but her argument is patently frivolous. She concedes that Sulzer "generally gives annual raises," Aplt. Br. at 30, concedes that these men worked for the company longer than her, yet maintains that seniority was not a pay factor. After some pause, it escapes us how seniority could not be a basis for paying an annual raise; it seems axiomatic that annual raises are paid precisely because an employee has attained a level of seniority. Ms. Allen's contention falters because she incorrectly equates seniority at Sulzer with previous experience at other employers. There certainly was evidence that prior experience was not a factor in determining starting salary, *see, e.g.*, Aplt. App., Vol. III at 1014-15, but seniority with Sulzer clearly was a pay factor given the annual raises. Because seniority is a valid basis for a salary variance, the district court correctly granted summary judgment on this claim.

## B.  Disparate Treatment

We next consider Ms. Allen's disparate treatment claim, which we will treat as a de facto amendment to her complaint given the district court's ruling. "In the Title VII context, this court applies the three-part burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)." *Etsitty*, 502 F.3d at 1220 (citation omitted). This framework requires Ms. Allen to make a prima facie case of prohibited employment action by showing that she:  (1) belongs to a protected class; (2) was qualified for her

-6-

position; (3) was terminated despite those qualifications; and (4) was terminated under circumstances that give rise to an inference of discrimination. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1166 & n.8 (10th Cir. 2007). Upon making this showing, "the burden shifts to [Sulzer] to articulate a legitimate, nondiscriminatory reason for its adverse employment action. If [Sulzer] satisfies this burden, summary judgment is warranted unless [Ms. Allen] can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." *Etsitty*, 502 F.3d at 1220 (quotations omitted).

There is no dispute that Ms. Allen is a member of a protected class, that she possessed the skills necessary for her job, and that she was terminated despite her qualifications. It is certainly arguable whether she was terminated under circumstances that create an inference of discrimination, but, viewing the evidence in her favor, we will assume she makes her prima facie case. Sulzer must therefore proffer some legitimate, nondiscriminatory reason for firing her. On this score, Sulzer cites seventeen unexcused absences or late arrivals during her eleven-month tenure as its legitimate reason for firing her. Sulzer points out that she exhausted her leave time in July, which is when she began to incur reprimands, and argues that it progressively disciplined Ms. Allen for her poor attendance and terminated her only after she continued to abuse the attendance policy. Sulzer insists that Ms. Allen's poor attendance and not some gender-based animus is what led to her termination. Ms. Allen responds that this

reason is pretext because men were absent, arrived late, and left early without repercussion, while she was repeatedly reprimanded. She claims that the company's selective disciplining resulted in her being treated differently and ultimately her termination.

Ms. Allen is pursuing a common method of proving pretext in disparate treatment claims: she is attempting to demonstrate that Sulzer "treated [her] differently from other similarly-situated employees who violated work rules of comparable seriousness in order to show that [Sulzer] failed to follow typical company practice in its treatment of [her]." *See Swackhammer*, 493 F.3d at 1167-68 (quotations omitted). Her allegations are not borne out by the record, however. She was warned verbally in July that she needed to comply with the attendance policy. Her first written warning followed a two-day absence in which she failed to notify her supervisors that she would not be at work. Her second written warning came after she was late three times. She received her third written warning as a consequence of an absence and her failure to timely report to work on two occasions in September. She was later suspended for missing four more days throughout October and November, and she was cautioned that another violation of the attendance policy would result in termination. When she was absent again on December 4, she was fired.

When compared to the male welders, there is no indication of disparate treatment. Sulzer submitted its discipline records for all its welders, revealing

that one man, identified as file number 330059, was fired because he arrived late, left early, or was absent nine times over the course of five months. Another male welder, file number 330052, was suspended after he left early three times and missed seven work days. Although he began working "later than the normal shift start time on 61 occasions," these late start times were apparently due to "the [employee's] need for odd hours and call-ins." Aplt. App., Vol. I at 232. Welder number 330063 was likewise suspended after being late five times and absent ten. Welder number 330064 was also suspended, although his attendance record is unclear. And the remaining disciplinary entries demonstrate that the other welders received verbal or written reprimands under circumstances substantially similar to those that brought about Ms. Allen's reprimands. On this record, we cannot say that she was treated differently from any of the male welders.

Ms. Allen adds that she was assigned unfavorable tasks when there was insufficient welding to be done, but her admission that the men were required to perform other work concedes the point. *See id.* at 161. She also cites a host of unavailing circumstances that purportedly show disparate treatment, including another employee's incompetence, another employee's safety violation, Sulzer's consideration of a doctor's note from an employee, and the company's production of an "excessive paper trail" after she threatened legal action, Aplt. Br. at 23, but none of this evidence shows that Sulzer discriminated on the basis of gender. Nor does it suggest that Sulzer's consistently stated explanation for terminating her

was false.  *See Swackhammer*, 493 F.3d at 1167.  Consequently, the district court was correct to grant summary judgment on this claim as well.

## C.  Retaliation

Ms. Allen's final claim may be proven in one of two ways:  the "mixed motive" theory, which requires a presentation of direct evidence of retaliatory animus that played a "motivating part in the employment decision," *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224-25 (10th Cir. 2008) (quotation omitted), or the familiar *McDonnell-Douglas* burden-shifting framework, *see id.* at 1225. Ms. Allen relies on *McDonnell-Douglas* and so must show that:  (1) she was engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged employment action materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse employment action.  *See Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).  Upon satisfaction of this showing, Sulzer must proffer a legitimate, nonretaliatory reason for terminating her to shift the burden back to Ms. Allen to show pretext.  *See id.* at 1202-03.

We have grave doubts that Ms. Allen can satisfy her initial burden.  She claims to have called the Action Line to report what she perceived to be gender discrimination, but during the call, made no allegations of discrimination.  As she recalled:  "Seems like I told them that I had a problem, that this guy was making more money at work or something."  Aplt. App., Vol. I at 203.  She asked the

representative what to do if she had a problem but declined to "tell anyone on the action line that [she was not] receiving the pay that the men were receiving." *Id.* at 204. It is highly doubtful that calling a company hotline to report a pay variance, without any allegation of discriminatory conduct, constitutes protected opposition to discrimination. And even if it does, Ms. Allen's claim would still fail because although she first suffered adverse employment action eleven days after she called the Action Line, *see Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) ("A retaliatory motive may be inferred when an adverse action closely follows protected activity."), she cannot show that Sulzer's reason for firing her was pretext for retaliation.

A showing of pretext requires a plaintiff to "produce evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Argo*, 452 F.3d at 1203 (quotations omitted). Ms. Allen does not challenge the integrity of Sulzer's attendance records or even deny her excessive absenteeism. Instead, she contends that the company misinformed her of its attendance policies and the consequences of her absences. She also insists that retaliatory animus is shown by her August 15 reprimand and her subsequent suspension. She further cites the "sham investigation" Ms. Downes undertook following their initial meeting,

-11-

Aplt. Br. at 14, the company's incomplete investigation into the reasons for her suspension, and Ms. Downes' failure to timely approve her absence to attend a second deposition. Additionally, she claims that one of her supervisors altered his testimony.

First, Ms. Allen was given an employee handbook that plainly set forth Sulzer's attendance policies; she was progressively disciplined and warned of the consequences of her poor attendance; and she signed each written warning, as well as her suspension notice. No reasonable jury could say under these circumstances that she was misinformed of the company's attendance policies. Second, the disciplinary measures Sulzer took against her do not show retaliation; they were the consequences of her persistent tardiness and absenteeism. Third, neither the investigations nor Ms. Downes' actions give rise to any inference of pretext, and "allegations alone will not defeat summary judgment," *Jencks v. Modern Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) (quotations omitted). Finally, Ms. Allen's contention that her supervisor altered his testimony is incomprehensible. She references his statements that he could not remember being involved with her suspension, had no knowledge of her subpoena, and would not charge an employee with an absence if they were legally bound to do something, but she cites no inconsistencies or contradictions. More importantly, she fails to explain how any of this testimony creates an inference of pretext. Because an appellant must make some effort at developed argumentation,

-12-

we deem the point waived. *See Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004). Lacking any showing of pretext, the district court properly granted summary judgment.

The judgment of the district court is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge