**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 23, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

CASSANDRA KINCAID,

    Plaintiff - Appellant,

v.

UNIFIED SCHOOL DISTRICT NO. 500,
KANSAS CITY, KANSAS,

    Defendant - Appellee.

No. 23-3004

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:21-CV-02059-DDC)**
_____

Dan Curry, Brown & Curry, LLC, Kansas City, Missouri (Anthony E. LaCroix, LaCroix Law Firm, LLC, Kansas City, Missouri, with him on the briefs) for Plaintiff-Appellant.

Gregory P. Goheen, McAnany, Van Cleave & Phillips, P.A., Kansas City, Kansas, for Defendant-Appellee.
_____

Before **HARTZ**, **TYMKOVICH**, and **ROSSMAN**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

Plaintiff-Appellant Cassandra Kincaid appeals the district court's grant of summary judgment on her claims of retaliatory harassment under two antidiscrimination statutes: Title VII, 42 U.S.C. § 2000e et seq., and Title IX, 20 U.S.C. § 1681. Kincaid, a

school administrator in Kansas City, Kansas, claims she was harassed by Defendant-Appellee Unified School District No. 500 (the District) in retaliation for her reporting a student-on-student sexual assault. We have jurisdiction under 28 U.S.C. § 1291. Because we agree with the district court that she has not satisfied her burden of creating a genuine dispute of material fact that the reasons given for the alleged material adverse actions against her were pretextual, we affirm the district-court judgment.

## I.     BACKGROUND

### A.     Factual Background

On appeal from the grant of a motion for summary judgment, we review the evidence in the light most favorable to Kincaid, the nonmovant. *See Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1310 (10th Cir. 2017).

During the events relevant to this appeal, Kincaid was an assistant principal at Central Middle School, a school within the District. Kincaid's supervisor was Principal Fred Skretta, who began working at Central Middle School in the 2018–19 school year. Kincaid claims she suffered retaliation for reporting two incidents in early 2019. In February some girls at the school reported that a male special-education student had hugged them in the hallway, touched their bottoms, and made them uncomfortable. Kincaid made a note of the incident at the time in an older school database, but not in the school's new "Infinite Campus" computer system. She did not discipline the male student

and told his guardian that no disciplinary record would be entered unless a second incident occurred.

In March another female student reported that the same male student "pushed [her] up against a wall and grinded up against her with his private parts." Aplt. App., Vol. 1 at 127 (internal quotation marks omitted). Before letting Skretta know about the incident, Kincaid contacted the office of the District's Director of Student Services and wrote up the student for sexual assault. She emailed Skretta about the assault later that day. Kincaid testified that she contacted Student Services before contacting Skretta because he was out of the building and she believed that she was following protocol. The next day, Kincaid entered information about both the sexual assault and the February incident in the Infinite Campus system. She also emailed district staff to set up a hearing for the male student and to inform them that he would serve a 10-day suspension; she did not include Skretta on her initial email but did copy him on the email chain the next business day.

Earlier in March, before the sexual assault, Skretta had emailed Kincaid and the other assistant principal at the school to tell them that he would be "taking over the reigns [sic] for the overall supervision and evaluation of our special services" because the "stakes are simply too high for me, as building principal, not to be the direct leader at SPED [the special education program] at Central." *Id.*, Vol. 3 at 358. Kincaid asked in response if she had "done anything wrong" and was told by Skretta that she had not but that he "just had conversations with my higher-ups and know that, like I stated, SPED is very high stakes and as head principal, I really need to be running it." *Id.* at 359 (internal quotation marks omitted). Skretta testified that he said the stakes were high because of

3

concerns communicated to him by his supervisors about the "discipline of special education students and being under the watch of the state for that" and "the over-suspension of special education kids in relation to other populations." *Id.* at 579.

The Monday after the sexual assault, Skretta sent both Kincaid and the other assistant principal an email informing them of a "[n]ew protocol": "whenever there is an issue with a Sped kid who [would] potentially be given discipline, please involve me before making any decisions re. consequences (suspension, etc.)." *Id.*, Vol. 1 at 130.

Four days later, Skretta sent Kincaid a "formal letter of concern regarding processes related to Infinite Campus and entry of discipline records." *Id.* at 131. He expressed his concern about how Kincaid had handled the February incident, saying that it was an "impropriety" to tell the male student's guardian that no disciplinary record would be entered unless there was a second incident, and that because the student "has significant special needs, . . . it would have been appropriate to address his behaviors immediately following the first incident with more intensive and sustained consequential behavior support" than was provided. *Id.*

Skretta's letter of concern also addressed Kincaid's handling of the sexual assault. It said it was "an error" on Kincaid's part to have "communicated directly with Student Services about it rather than speaking with [Skretta] first," as he "should always be informed of any incident that might be escalated beyond Central Middle School." *Id.* He therefore wanted to "clarify" two points. *Id.* First, Skretta was "ultimately responsible for special education services at Central," as he had already communicated to Kincaid, and he needed to exercise "supervision of everything related to supervision of special

4

education students and staff." *Id.* That meant he must be involved before any "decisions re. consequences" were made regarding "a Special Education student who is potentially being given discipline." *Id.* Second, when Kincaid had "concerns related to student discipline, whether . . . related to a special education or regular education student," Skretta was to be "the first contact prior to contacting anyone at Student Services." *Id.* Part of Kincaid's "responsibility as an Assistant Principal" was to keep Skretta "fully informed, including incidents [Kincaid was] considering for escalation beyond Central Middle School." *Id.* at 131–32. Skretta concluded by informing Kincaid that any "future concerns of this nature will lead to further disciplinary action, up to and including termination of employment." *Id.* at 132.

The letter of concern was placed in Kincaid's personnel file. Skretta did not issue any other formal letters of concern to Kincaid or formally discipline her in any other way during the rest of his time at Central Middle School. Elizabeth Faircloth, a member of the District's human-resources department who investigated Kincaid's allegations, testified that a letter of concern was considered "non-disciplinary," *id.*, Vol. 3 at 483, although one of Skretta's supervisors, Kristen Scott, testified that while she "kn[e]w it's called a letter of concern, . . . if it's going in the personnel file, to me it's a letter of reprimand," *id.* at 475. Faircloth recommended that the letter of concern be amended to be a letter of reprimand, because she thought Kincaid's policy violations had been serious.

Two days after receiving the letter of concern, Kincaid emailed a written complaint to the District's human-resources department about Skretta's behavior. The complaint alleged that "[f]or the last couple of months," Kincaid had "felt singled out and

5

harassed" by Skretta, that it was unfair for Skretta to issue the letter of concern without stating what policy Kincaid violated in reporting the sexual assault, and that a reprimand for her handling of the February incident was unwarranted. *Id.*, Vol. 1 at 135–36. The complaint also said that Skretta had scheduled a meeting with her to discuss the letter of concern but she would prefer not to meet with him alone. *See id.* at 136. Dr. Eva Tucker-Nevels, one of Skretta's supervisors, attended the meeting. Kincaid testified that at the meeting Skretta was "very upset, very angry, and very curt," and disagreed with Dr. Tucker-Nevels when she indicated the letter of concern would not go into Kincaid's file. *Id.*, Vol. 3 at 541.

As described in more detail below, Kincaid claims that after her report of the sexual assault and her receipt of the letter of concern, "Skretta changed his behavior and became more aggressive with her," with "[m]ost of his harassment of Kincaid beg[inning] after she made the report." Aplt. Br. at 9. This alleged retaliatory harassment included singling Kincaid out for criticism, talking down to her, assigning her duties to the other assistant principal, requesting that she be transferred from his building, and excluding her from meetings.

### B.    Procedural History

Kincaid filed a charge of discrimination with the Equal Employment Opportunity Commission in November 2020, and filed suit in February 2021 after receiving a right-to-sue letter. Kincaid alleged retaliation under both Title VII and Title IX. The District

moved for summary judgment on all Kincaid's claims, which the district court granted.

The district court also denied Kincaid's request to amend or modify the pretrial order.

## II.     ANALYSIS

### A.     Standard of Review

We review the district court's grant of summary judgment de novo, applying the

same standard that the district court is to apply. *See Hiatt*, 858 F.3d at 1315. Viewing the

evidence in the light most favorable to Kincaid, the nonmovant, we must determine

whether a genuine issue of material fact exists in regard to her Title VII and Title IX

claims. *See id.*

Title VII prohibits employers from retaliating against employees who have

opposed an "employment practice," such as sex discrimination, made unlawful by that

Title. 42 U.S.C. § 2000e-3(a); *see Hiatt*, 858 F.3d at 1315. Title IX has similarly been

interpreted to prohibit retaliation against individuals for complaining of sex

discrimination. *See Hiatt*, 858 F.3d at 1315.

Because the parties agree that Kincaid presents only indirect evidence of

retaliation, both her Title VII and Title IX claims are analyzed under the *McDonnell*

*Douglas* burden-shifting framework. *See id.* at 1315–16 (citing *McDonnell Douglas*

*Corp. v. Green*, 411 U.S. 792, 802–05 (1973)). Under *McDonnell Douglas* a plaintiff

must first establish a prima facie case that the employer took a materially adverse action

against her in retaliation for activity protected by the applicable statute. *See Hiatt*, 858

F.3d at 1316. "The burden then shifts to the employer to articulate a legitimate, . . .

nonretaliatory reason for the adverse action. If the employer satisfies this burden, then

7

summary judgment is warranted unless the plaintiff can show there is a genuine issue of material fact as to whether the proffered reason is pretextual." *Id.* (cleaned up).

### B.    Title IX Claim

The district court ruled that reporting a student-on-student sexual assault constitutes protected activity under Title IX, a determination that the District does not challenge on appeal. The court also ruled that all but seven of the alleged employment actions taken by the District against Kincaid were not materially adverse.[1] On appeal Kincaid does not challenge that ruling.[2] In addition, she has abandoned her claim with respect to one of those seven actions.[3]

That leaves six allegedly material adverse employment actions. But we need address only three of them. The district court ruled that the District provided facially nonretaliatory reasons for each of these actions, yet Kincaid did not adequately argue in district court that the District's explanations for three of the actions were

---

[1] The district court used the descriptions of the adverse actions in Kincaid's summary-judgment briefing, even though, as will be apparent as we discuss the adverse actions, the descriptions are often inaccurate.

[2] In particular, Kincaid does not challenge on appeal the district court's ruling that five actions allegedly taken by Skretta did not constitute materially adverse actions. Those actions were that he (1) "spoke down to [Kincaid] during 20 meetings," (2) "stopped talking to her," (3) "pretended [Kincaid] was not there," (4) "spoke angrily to [Kincaid] when she opposed the purportedly retaliatory reprimand," and (5) "required her to be punctual but let her colleague come and go as she pleased." *Kincaid v. Unified Sch. Dist. No. 500*, 645 F. Supp. 3d 1134, 1165 (D. Kan. 2022) (original brackets and internal quotation marks omitted).

[3] The claim that Kincaid does not pursue on appeal is that the District retaliated against her by not hiring her for a lead principal position she applied for.

pretextual.[4] *See Rademacher v. Colo. Ass'n of Soil Conservation Dists. Med. Benefit Plan*, 11 F.3d 1567, 1571 (10th Cir. 1993) ("Points raised but not argued below ordinarily will not be considered on appeal."). Accordingly, we consider only those three employment actions determined by the district court to be materially adverse and for which Kincaid adequately challenged the explanation as pretextual[5]: two emails Skretta sent to Kincaid asking that she keep him informed about 911 calls and fire alarms at Central, an email Skretta sent to his supervisors asking that Kincaid be transferred from the school, and the letter of concern. Unpersuaded by the challenges, we affirm the dismissal of the Title IX claim.

---

[4] In district court Kincaid failed to adequately challenge as pretextual the District's facially legitimate nonretaliatory justifications for the following three adverse actions: that Skretta "gave [Kincaid's] duties to other employees to avoid her," "deprived [Kincaid] of district information that undermined her ability to instruct her subordinates and parents," and gave her a blank performance evaluation. *Kincaid*, 645 F. Supp. 3d at 1169–70 (original brackets and internal quotation marks omitted). In the section of her district-court brief addressing pretext, Kincaid asserted that the District did not provide a legitimate nonretaliatory reason for these three actions. (She does not press that assertion on appeal.) She did not, however, present an argument that the District's justifications for those specific actions were pretextual.

[5] We decline to consider Kincaid's argument on appeal that the District's justifications for Skretta's alleged "verbal harassment" were pretextual. Aplt. Br. at 21. That argument is based on evidence that Skretta "talked down" to Kincaid 20 to 25 times, Aplt. App., Vol. 3 at 504–05, behavior that the district court ruled, without challenge on appeal by Kincaid, did not constitute a materially adverse action. See footnote 2, *supra*. Thus, whether or not the reasons given for engaging in that behavior were pretextual, the conduct did not violate Title IX.

9

### 1.     *The fire-alarm and 911-call emails*[6]

The district court held that two emails Skretta sent to Kincaid in February 2020—almost a year after Kincaid reported the sexual assault—could constitute materially adverse actions. Skretta sent Kincaid the first email after he learned about a fire alarm that had gone off at the school without his being notified. He asked that he be informed as soon as possible of any future fire alarms in the building. The second email, which was sent to both Kincaid and the other assistant principal, concerned an incident where 911 was called but Skretta was not informed; Skretta again asked to be told as soon as possible if someone at the school called 911. The district court dismissed Kincaid's claim with respect to this action on the ground that the reasons contained in the emails themselves—that Skretta wanted to be informed about fire alarms and 911 calls at the school—were facially nonretaliatory reasons for which Kincaid failed to provide sufficient evidence of pretext.

Without questioning the district court's ground for dismissal, we think it more important to declare that the court was too generous in saying that the emails could constitute material adverse actions. An action is "materially adverse" in the context of a retaliation claim if the action "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry.*

---

[6] The district court described these adverse actions as follows: "Skretta blamed [Kincaid] for conduct that was not her fault, chronically found fault in her work." *Kincaid*, 645 F. Supp. 3d at 1168 (original brackets and internal quotation marks omitted). The court found that this claim was based on the 911-call and fire-alarm emails, a determination Kincaid does not challenge on appeal.

*Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). That definition was not satisfied here. The emails did not punish Kincaid; they simply asked Kincaid to communicate certain information in the future. This is standard fare in any bureaucracy. And the emails were sent almost a year after Kincaid reported the sexual assault. The prospect of receiving such emails many months in the future would not deter a reasonable person from reporting discrimination. We therefore affirm the dismissal of Kincaid's claim with respect to this action on that ground. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011) ("We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal."). We note that the District's motion for summary judgment in district court disputed that these emails constituted material adverse actions, so Kincaid has had a fair opportunity to address the issue.

### 2.     *Skretta's request that Kincaid be transferred*[7]

A little less than a year after Kincaid's report of the sexual assault, Skretta requested to his supervisors that Kincaid be removed from his school because he did not trust her and felt she could not communicate with him, citing the fire-alarm incident and the sexual-assault report. Kincaid was never in fact transferred. The

---

[7] The district court described this adverse action as follows: "Principal Skretta repeatedly requested that [Kincaid] be moved from his building, saying she could not be trusted and otherwise maligned her during the investigative process with irrelevant rumors." *Kincaid*, 645 F. Supp 3d at 1170 (ellipses and internal quotation marks omitted). Skretta's communications to his supervisors requesting Kincaid's transfer were also the basis of Kincaid's claim that he "maligned" her, so we need not address that issue separately from the request for her transfer itself. *See id.*

district court found that Skretta's stated reasons for requesting her transfer were facially nonretaliatory.

Kincaid's only pretext argument that touches on this adverse action contends that the district court failed to draw all reasonable inferences in her favor as required at summary judgment. She argues that the district court should have inferred that part of the reason Skretta asked that she be transferred was that Kincaid reported the sexual assault. But Kincaid does not provide any evidence supporting that conclusion beyond her insistence in her appellate brief that the facially nondiscriminatory reasons for requesting her transfer were pretextual. That will not suffice. "Mere conjecture that the employer's explanation is pretext is insufficient basis to defeat summary judgment." *Jencks v. Mod. Woodmen of Am.*, 479 F.3d 1261, 1267 (10th Cir. 2007) (internal quotation marks omitted).

3.    *Skretta's letter of concern*

Kincaid focuses most of her pretext-related arguments on Skretta's letter of concern, which the district court held constituted a materially adverse action. The District provided facially legitimate nonretaliatory reasons for the letter. Skretta said he thought that Kincaid had mishandled the February incident with the male student by not instituting more behavioral support and by telling his guardian that no discipline would be imposed unless the behavior reoccurred. And she had not reported the sexual assault to Skretta before taking it to Student Services, despite Skretta's having told Kincaid that he was taking over special education because it was "very high stakes and as the head principal, I really need to be running it." Aplt. App., Vol. 3 at 359 ¶ 70. The district court

held that these were facially nonretaliatory reasons for issuing a letter of concern to "clarify" Skretta's expectations going forward. *Id.*, Vol. 1 at 131.

Kincaid does not challenge the district court's ruling that the explanation was facially nonretaliatory. But she claims it was pretextual. Her arguments, however, are insufficient to defeat summary judgment.

<em>i.      The District's treatment of similarly situated employees</em>

First, Kincaid argues that the District treated other similarly situated employees differently than it treated her and that this difference in treatment establishes that the reasons given for issuing the letter of concern were pretextual. True, "a plaintiff may . . . show pretext . . . by providing evidence that [s]he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1232 (10th Cir. 2000). But Kincaid has identified no other employees who mishandled student misconduct by telling the student's guardian that no discipline would be recorded when a more serious response was warranted or who failed to report a sexual assault (or, indeed, any other serious incident) to the head principal before reporting the incident beyond the school. Because she cannot point to another similarly situated employee "who violated work rules of comparable seriousness," *id.*, this argument for pretext fails.

<em>ii.      The District's investigation</em>

Kincaid next argues that the District failed to conduct a fair investigation into the conduct that led to the letter of concern. She claims that the District's investigation was

13

improper because there was no investigation until November 2020, some 20 months after she first complained that the letter of concern was retaliatory. This court has at times found that an inadequate investigation into alleged misconduct by an employee can support an inference of pretext. *See Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1199 (10th Cir. 2021); *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 542 (10th Cir. 2014). For example, if an employer claims that discipline of the employee was appropriate because an investigation showed the employee's misconduct or dereliction of duty, the employee can point to defects in the investigation as indicating that the employer had no interest in finding out whether the employee was actually guilty as charged. *See Ibrahim*, 994 F.3d at 1199–1200. But Skretta's letter of concern was not the result of the District's investigation, which took place long after she received the letter. Kincaid has not explained how evidence regarding the quality of the District's investigation can support an inference that Skretta's reasons for issuing the letter of concern were pretextual.

iii.      *Inconsistencies in the District's justification for the letter of concern*

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherence, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted [nonretaliatory] reasons." *Jencks*, 479 F.3d at 1267 (internal quotation marks omitted). Kincaid claims that Skretta's reasons for issuing the letter of concern possess "weaknesses

14

and implausibilities that tend to show pretext." Aplt. Br. at 16. But she misstates the evidence in making her argument. While she claims that "Skretta did not announce any change in protocol" before issuing the letter of concern, *id.*, it is undisputed that he in fact *did* announce, before the sexual assault, that he would be taking over the "overall supervision and evaluation" of the special-education department because he needed to be the "direct leader," Aplt. App., Vol. 3 at 358. It is not inconsistent or implausible that the principal of the school and head of the special-education department would want to be consulted before special-education student disciplinary actions were reported outside the school, especially when he was told by his superiors that the district was concerned about the over-disciplining of special-education students. It is also not inconsistent for a leader to issue a letter of concern "clarify[ing]" his reasonable and foreseeable expectations without explicitly stating them beforehand. *Id.*, Vol. 1 at 131 (letter of concern). Even if it would have been better to have previously announced more explicit policy expectations, when we consider an allegation of retaliatory harassment under Title IX, we do not "ask whether the employer's reasons were wise, fair or correct." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007).

Kincaid also argues that Skretta's letter of concern accused her of "fail[ing] to document" the February incident even though she claims that she *did* document the incident in a separate reporting system, and that this inconsistency creates an inference of pretext. Aplt. Br. at 17. But the letter of concern does not accuse Kincaid of failing to document the February incident; what it does mention is that Kincaid

15

should have provided the student with more intensive support, and that it was improper to tell the student's guardian that she "would not enter any discipline record unless a second incident occurred," Aplt. App., Vol. 1 at 131 (letter of concern), conduct she has never challenged. And though Kincaid claims the District "gave different, conflicting reasons" for the letter of concern, Aplt. Br. at 17–18, she does not state what those reasons were, so we cannot ourselves evaluate whether they were in fact conflicting. Instead, she merely supports her argument with a lengthy string citation to the record. But even when considering the briefs of pro se litigants, whose pleadings we view liberally, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). Much less will we take on that responsibility for a represented party. *See Sawyers v. Norton*, 962 F.3d 1270, 1286 (10th Cir. 2020) ("arguments that are inadequately presented in an opening brief" are waived (internal quotation marks omitted)). Kincaid has failed to demonstrate any implausibilities or inconsistencies in the District's facially nonretaliatory explanations for the letter of concern that would support an inference of pretext.

iv. *Disturbing procedural irregularities and failure to follow District policy*

Kincaid's next two arguments are that "disturbing procedural irregularities" and "failure to follow [District] policy" in the issuance of the letter of concern should create an inference of pretext. Aplt. Br. at 18–19 (internal quotation marks omitted).

16

*See Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) ("Evidence of pretext may include . . . disturbing procedural irregularities (e.g., falsifying or manipulating criteria)." (original ellipses and internal quotation marks omitted)); *Kendrick*, 220 F.3d at 1230 (stating that a plaintiff may make a showing of pretext "with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff").

To support these propositions Kincaid points to testimony by Kristen Scott, one of Skretta's supervisors, that it was District policy that any formal discipline needed to state which policies the employee violated, yet Skretta's letter of concern failed to reference an explicit policy that had been in place at the time Kincaid contacted Student Services about the sexual assault. Kincaid also notes that Scott stated that she would not have issued the letter. Scott later clarified, however, that "that's me personally how my leadership is and just following just sound practice." Aplt. App., Vol. 3 at 475. Scott also said that general District policies recognizing that a school's principal is in charge of supervising and administering discipline could support Skretta's issuing the letter of concern. And Elizabeth Faircloth, the District official who investigated Kincaid's complaint about Skretta, testified that the letter did "not necessarily need" to state what policy Kincaid violated. *Id.* at 482.

Kincaid argues that Scott's testimony demonstrates that the letter of concern needed to indicate what policy Kincaid violated and, indeed, that it should never have

been issued at all.[8] She then argues that these procedural violations are sufficient to support an inference of pretext.

Kincaid is correct that procedural irregularities by an employer can suggest that the employer's stated reasons for taking adverse action against an employee are pretextual. Say, the employer contends that an employee's termination was based on an evaluation of the employee's performance. It is merely commonsense to infer that the explanation is pretextual if the evaluation of the employee bypassed standard procedures that protect an employee from unfair and biased decision-making. *See, e.g.*, *Doe v. Univ. of Denver*, 1 F.4th 822, 832 (10th Cir. 2021) (in investigation of sexual-assault accusation against plaintiff, investigators interviewed all 11 witnesses provided by accuser but none of 5 witnesses provided by plaintiff); *Whittington v. Nordam Grp. Inc.*, 429 F.3d 986, 994 (10th Cir. 2005) (all other employees were selected for a reduction in force by management team according to stated discipline

---

[8] Kincaid also points to the meeting she had with Skretta and Dr. Tucker-Nevels where Skretta "in a hostile manner" insisted that the letter of concern go in Kincaid's personnel file when his supervisor indicated it would not. Aplt. Br. at 18–19. But such common minor breaches of decorum cannot serve as procedural violations showing pretext. This court has repeatedly held that the antidiscrimination statutes "do[] not establish 'a general civility code,' *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998), for the workplace." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012) (Title VII claim); *see Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (in Americans with Disabilities Act (ADA) retaliation case, "recognizing that the ADA, like Title VII, is neither a general civility code nor a statute making actionable the ordinary tribulations of the workplace." (internal quotation marks omitted)); *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342, 350 (6th Cir. 2020) ("Title IX, like Title VII, is not a 'general civility code.'" (quoting *Oncale*, 523 U.S. at 81)). We will not impose such a civility code in the guise of requiring procedural regularity.

and performance criteria under which plaintiff would not have been included, but plaintiff alone was selected for inclusion on the sole judgment of his supervisor); *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174 (10th Cir. 1998) (in age-discrimination case, employer adopted policy that it would not consider future potential of employees in deciding whether to terminate them in connection with a reduction in force but it then did consider future potential of younger staff).

But an inference of pretext does not follow from every departure from standard procedure. *See Fassbender v. Correct Care Sols., LLC*, 890 F.3d 875, 889 (10th Cir. 2018) (The "mere fact that an employer failed to follow its own internal *procedures* does not necessarily suggest that the employer was motivated by illegal [retaliatory] intent or that the substantive reasons given by the employer for its employment decision were pretextual." (internal quotation marks omitted)). That is certainly the case here. The procedural irregularity alleged by Kincaid is the failure to include in the letter of concern a reference to an official District policy violated by Kincaid. According to Kincaid, this was not just a procedural lapse—a neglect to point to the official policy that Skretta was relying on. She contends that there was no such official policy.

Kincaid appears to be saying that the explanation for the letter of concern that is provided in the letter itself must be pretextual because it is an improper ground for such a letter (the letter needed to be based on violation of a formal policy, and there was no such formal policy). What is missing from Kincaid's argument, however, is any explanation of why this failure to cite an official policy implies that Skretta's

19

explanation for issuing the letter may have been pretextual. The fact that the stated ground may have violated District policy does not show that the stated ground was insincere. Indeed, all the relevant evidence indicates that Skretta's reason for issuing the letter, even if improper, was sincere. Any procedural irregularity in the issuance of the letter fails to support an inference of pretext.

> v.  *The district court's refusal to draw inferences in Kincaid's favor*

Kincaid claims that the district court erred by not applying the proper standard of review on summary judgment in that it did not draw all reasonable inferences in her favor. She argues that the court should have interpreted the letter of concern as disciplining her simply for reporting the sexual assault. But such a reading of the letter is plainly unreasonable. As it relates to the sexual assault, the letter reprimands her solely for failing to consult with Skretta before reporting the incident beyond the walls of the school. Although the court "must draw all factual inferences in favor of the nonmovant, those inferences must be reasonable." *Deherrera v. Decker Truck Line, Inc.*, 820 F.3d 1147, 1159 (10th Cir. 2016) (internal quotation marks omitted). Kincaid's request that the court draw an unreasonable inference is insufficient to defeat summary judgment on the pretext issue.

> 4.  ***Totality of the evidence***

Finally, Kincaid argues that the totality of the evidence supports a finding of pretext. *See Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008) (Gorsuch, J.) (explaining that courts are not to "look at each piece of evidence in

20

isolation; rather, in assessing whether plaintiffs have shown pretext, we are obliged to consider their evidence in its totality"). But as we have explained, none of the evidence she has adduced creates a genuine dispute of material fact about pretext, and considering it all together does nothing to alter that conclusion. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1270–71 (10th Cir. 2019) ("[W]hile we here address Plaintiff's arguments sequentially for ease of analysis, we have considered her evidence in its totality and find all of her evidence, taken as a whole, insufficient to permit an inference of pretext.").

### C.    Title VII Claim

The district court ruled that Kincaid's reporting of the sexual assault was not activity protected from retaliation by Title VII because Kincaid was not challenging an employment practice of the District. Kincaid does not challenge this ruling on appeal. Rather, she contends that the district court abused its discretion by failing either to interpret the pretrial order broadly to encompass other instances of allegedly protected activity or to allow her to amend the pretrial order to include that additional protected activity. We seriously doubt that the district court abused its discretion in making these rulings, but we need not resolve the issue. Even if Kincaid did engage in activity protected by Title VII, she relies on the same allegations of retaliation as she does for her Title IX claim. Therefore, for the same reasons that we affirm the district court's grant of summary judgment on Kincaid's Title IX claim—namely, that the District provided nonretaliatory reasons for its materially adverse actions against Kincaid, and Kincaid

failed to produce evidence that the reasons were pretextual—we also affirm the district court's grant of summary judgment on her Title VII claim.

### III.    CONCLUSION

We **AFFIRM** the judgment of the district court.