FILED
United States Court of Appeals
Tenth Circuit

January 15, 2025

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

RAUL RODRIGUEZ, JR.,

     Plaintiff - Appellant,

v.

LOUIS DEJOY, Postmaster General,

    Defendant - Appellee.

No. 24-6014
(D.C. No. 5:22-CV-00618-HE)
(W.D. Okla.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **McHUGH**, and **MORITZ**, Circuit Judges.
_____

The district court granted summary judgment against Raul Rodriguez, Jr.'s

claims of employment discrimination and retaliation.  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

### I.    Background

Rodriguez worked for the postal service (USPS) beginning in 2003.  At times

relevant to this appeal, in 2020–2021, he was a rural carrier at the Sooner Station post

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

office in Norman, Oklahoma.  In May 2020, USPS adjusted four rural routes at

Sooner Station, including Rodriguez's.  The changes resulted in a salary decrease for

Rodriguez and two other carriers.  One carrier's salary increased.

In July 2020, Rodriguez was involved in a physical altercation with a customer

and injured his pinky finger.  Based on care he received at the time, he understood his

injury to be a "really bad jammed finger."  R. vol. 1 at 366.  Approximately two

years later, it was diagnosed as a flexor tendon tear.

In September 2020, Rodriguez's route was included in a "special count" of

over 2,000 delivery routes nationwide.  R. vol. 1 at 84.  Based on the count data, his

route was reclassified, with the result that Rodriguez was required to work more

hours with no increase in pay.

Following the changes to his route, hours, and pay, Rodriguez initiated an

informal EEO complaint in October 2020.[1]  The parties participated in mediation on

December 10, 2020, but did not reach an agreement.

On December 21, 2020, Rodriguez told his supervisor he would be requesting

leave for December 26.  When his supervisor indicated the request would be denied,

---

[1] The district court stated that Rodriguez contacted the Equal Employment
Opportunity Commission (EEOC).  In fact, consistent with procedures for federal
sector employees, he first contacted a USPS EEO counselor, then filed a formal
complaint with USPS's EEO Investigative Services Office.  *See generally Hickey v.
Brennan*, 969 F.3d 1113, 1119 (10th Cir. 2020) (describing EEO procedures for
federal sector employees); 29 C.F.R. §§ 1614.105, 1614.106.  But the administrative
history isn't relevant to our analysis in this "*de novo* 'civil action.'"  *Dossa v. Wynne*,
529 F.3d 911, 914 (10th Cir. 2008) (citing *Chandler v. Roudebush*, 425 U.S. 840, 863
(1976)).

2

Rodriguez told her to "Fu*** off." R. vol. 2 at 152. During the exchange that followed, Rodriguez repeated "fu*** you," multiple times, and another supervisor placed his hand on Rodriguez's chest in attempt to diffuse the situation. R. vol. 1 at 89, 402, 405; R. vol. 2 at 152. Believing Rodriguez might physically attack his supervisor, the station manager instructed Rodriguez to leave the building and not return until he was contacted. USPS then removed Rodriguez from duty without pay pending an investigation.[2] After its investigation, USPS concluded Rodriguez had violated several rules and regulations and notified him that his employment would be terminated.

Rodriguez then filed a formal EEO complaint, on January 30, 2021, alleging unlawful discrimination and retaliation based on the events summarized above and related incidents not raised in this appeal. In June 2021, the parties executed a settlement agreement under which he was allowed to voluntarily resign, effective February 7, 2021. USPS also completed an investigation of his formal EEO complaint and concluded his claims were not supported. Rodriguez brought this action in July 2022, alleging USPS discriminated against him on the basis of his race, color, national origin, and sex, in violation of 42 U.S.C. § 2000e-16(a), and based on disability in violation of the Rehabilitation Act, 29 U.S.C. § 794(a). He also claimed USPS retaliated against him for engaging in protected activity. The district court granted USPS's motion for summary judgment, and Rodriguez appeals.

---

[2] Specifically, Rodriguez was placed on an "emergency placement," which USPS describes as "an off-duty, nonpay status." R. vol. 1 at 77.

## II.    Summary Judgment Standards

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Iweha v. Kansas*, 121 F.4th 1208, 1220 (10th Cir. 2024) (internal quotation marks omitted). We review the district court's grant of summary judgment de novo, applying the same legal standards as the district court. *Id.* However, we conduct our review "from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

A party moving for summary judgment "shoulder[s] the initial burden of showing that there is an absence of evidence to support the nonmoving party's case." *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200 (10th Cir. 2022) (internal quotation marks and brackets omitted). If the moving party will not bear the burden of persuasion at trial, it may make this showing "simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler*, 144 F.3d at 671. "[I]t then falls to the nonmovant to identify specific facts that show the existence of a genuine issue of material fact." *GeoMetWatch*, 38 F.4th at 1200 (internal quotation marks and brackets omitted). "To survive summary judgment, the nonmovant must present sufficient evidence in specific, factual form for a jury to return a verdict in that party's favor." *Id.* (internal quotation marks omitted). We draw all reasonable inferences in favor of the party

4

opposing summary judgment, but "statements of mere belief must be disregarded," and "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." *Id.* at 1200, 1201 (internal quotations marks and ellipsis omitted).

### III.    Discussion

### A.    McDonnell Douglas Framework

Because Rodriguez does not have direct evidence of discrimination or retaliation, we analyze his claims under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *See Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). In this analysis, "a plaintiff must first raise a genuine issue of material fact on each element of [his] prima facie case." *Id.* (internal quotation marks omitted). "The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* (internal quotation marks omitted). If it does so, "the burden then reverts to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (internal quotation marks omitted).

At the third step, a plaintiff must identify evidence to show the employer's proferred reasons are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief." *Bekkem*, 915 F.3d at 1268 (internal quotation marks omitted). When evaluating potential pretext, "the relevant inquiry is not whether the employer's proffered reasons were

wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Lobato v. N. M. Env't Dep't*, 733 F.3d 1283, 1289 (10th Cir. 2013) (internal quotation marks and brackets omitted). We therefore "examine the facts as they appear to the person making the decision, not the plaintiff's subjective evaluation of the situation." *Id.* (internal quotation marks and brackets omitted).

### B.    Disparate Treatment

We understand Rodriguez to be challenging the following actions by USPS as allegedly discriminatory: (1) the May 2020 route adjustments and resulting reduction of his pay; (2) USPS's actions responding to the July 2020 altercation with a customer; (3) the reevaluation of Rodriguez's route following the September 2020 special count and resulting increase in his work hours; and (4) USPS's actions responding to the events of December 21, 2020, including suspending Rodriguez and notifying him that he would be terminated.[3] He claims discrimination based on his race (Hispanic), national origin (Mexican American), color (brown), sex (male) , and a claimed disability resulting from his finger injury.

---

[3] Rodriguez was represented by counsel in district court but proceeds pro se in this appeal. We liberally construe his briefs, but we "cannot take on the responsibility of serving as the [his] attorney in constructing arguments and searching the record." *Kincaid v. Unified Sch. Dist. No. 500,* 94 F.4th 936, 947 (10th Cir. 2024) (internal quotation marks omitted).

We address the actions and facts raised in Rodriguez's briefs, read liberally, as potential bases for his claims. But we do not take up issues he has not raised or arguments he has not developed. *See GeoMetWatch*, 38 F.4th at 1211 n.15 (stating arguments that are insufficiently raised on appeal are waived).

First addressing the July 2020 altercation, we conclude Rodriguez has not established a prima facie case of discrimination based on USPS's response to this incident. He contends USPS mishandled the incident, including by not taking his injury seriously and by discouraging him from pursuing legal remedies. But even viewed in the light most favorable to Rodriguez, he has not identified evidence that shows USPS treated him differently than any other employee who was injured or involved in a similar incident, or otherwise permits an inference that USPS acted based on any protected characteristic. *See Ford v. Jackson Nat'l Life Ins. Co.,* 45 F.4th 1202, 1222 (10th Cir. 2022) (a prima facie case requires showing "circumstances giving rise to an inference of discrimination"). Even if we agreed that USPS should have done more to help Rodriguez, he has not identified evidence to show it had a discriminatory motive. His claim on this basis therefore fails.[4]

Turning to the remaining incidents, we assume, without deciding, that Rodriguez has established a prima facie case. However, USPS has offered legitimate nondiscriminatory reasons for the changes to his route and its response to the

---

[4] Because we conclude below that USPS had legitimate, non-pretextual reasons for its actions after July 2020, he also cannot show it discriminated against him because of any disability resulting from his finger injury. He has not advanced a claim that USPS failed to accommodate his injury, or shown he requested accommodation.

In the district court, he also claimed disability based on fight or flight syndrome, diagnosed in January 2021. On appeal, he vaguely refers to the traumatic nature of the July 2020 altercation but does not develop any argument of discrimination on this basis. Any such claim is therefore waived. *See GeoMetWatch,* 38 F.4th at 1211 n.15.

December 21, 2020, altercation.  Rodriguez has not identified evidence from which a reasonable jury could find those reasons are pretextual.

As to the May 2020 route changes, USPS's evidence shows the changes were directed by its district office based on data showing that the routes affected were "overburdened" based on size, mileage, number of mailboxes, and the time needed to deliver on those routes.  *See* Aplee. Br. at 4–5 n.4, 7.  There is no evidence that the evaluation or changes targeted Rodriguez based on protected characteristics, or that he was treated less favorably than other employees.  To the contrary, USPS's evidence shows the route changes were based on neutral criteria.  USPS has therefore shown a nondiscriminatory reason for its actions.  Rodriguez has not identified evidence showing this reason was pretext.  Although USPS reduced his pay as a result of the route changes, that was also true for two other carriers, both of whom were white, without known disabilities, and one of whom was male.  The carrier whose pay increased was a male of Moroccan descent, more similarly situated to Rodriguez.

Similarly, the September 2020 special count was conducted annually and nationwide on routes selected using standardized and objective criteria.  USPS has thus shown a nondiscriminatory reason for the route reclassification that increased Rodriguez's hours.  Again, he has not identified evidence from which a jury could conclude those reasons are pretextual.  There is no evidence, for example, to show his route either should not have been included in the special count or should not have been reclassified based on the count data.  Thus, for both the May 2020 and

8

September 2020 route changes, there is no evidence that USPS applied relevant criteria differently for Rodriguez than other carriers, departed from standard procedures, or has offered false explanations. *See generally Iweha*, 121 F.4th at 1226 (identifying typical means of showing pretext). Rodriguez therefore has not produced evidence from which a reasonable jury could find its reasons for the route changes were pretextual.

The same is true of USPS's actions related to the December 21, 2020, altercation. Rodriguez does not dispute that he told his supervisor to "fu*** off," and he admits the altercation occurred on the workroom floor and was disruptive to other employees. Both Rodriguez's immediate supervisor and the station manager felt he had violated a zero-tolerance policy for workplace violence and other policies. Viewing the evidence from the perspective of the relevant decisionmakers, it reflects that they had a good faith basis to conclude Rodriguez should be suspended. The subsequent investigation also concluded Rodriguez had violated workplace policies and his employment should be terminated. USPS has thus provided a nondiscriminatory explanation for its actions.

In response, Rodriguez has not identified anything other than his own belief to suggest USPS acted in bad faith. We see no evidence to show it acted contrary to its policies or to otherwise cast doubt on the conclusion that USPS's decisionmakers "honestly believed" the reasons for their actions and "acted in good faith upon them." *Iweha*, 121 F.4th at 1226 (internal quotation marks omitted).

In opposing summary judgment, Rodriguez argues he was treated unfairly and that USPS's actions were a "knee jerk reaction" and overly severe. Aplt. Opening Br. at 2. He also objects that both USPS and the district court have unfairly portrayed him as an aggressor. However, our role is neither to decide whether the decisions USPS made were "wise, fair or correct," nor to "sit as a superpersonnel department that second-guesses [USPS's] business decisions, with the benefit of twenty-twenty hindsight." *Iweha*, 121 F.4th at 1226 (internal quotation marks omitted). We need not opine whether, in hindsight, USPS might have misjudged Rodriguez's conduct. We only conclude that he has not identified evidence from which a reasonable jury could find the reasons USPS has offered for its actions are "unworthy of belief." *Bekkem*, 915 F.3d at 1267 (internal quotation marks omitted).

## C.    Retaliation

Rodriguez bases his retaliation claim on the same actions identified above that occurred after his October 2020 EEO complaint. But as explained above, USPS had legitimate, non-retaliatory reasons for its actions and Rodriguez has not identified evidence to show those reasons are pretextual. He therefore did not carry his burden at step three of the *McDonnell Douglas* analysis for his retaliation claim.

Rodriguez does point out that the December 21, 2020, altercation closely followed the December 10, 2020, mediation. He accuses USPS of "making up an event that would lead to my termination," in retaliation for statements he made at the mediation. Aplt. Opening Br. at 4. But while such close "temporal proximity" between protected conduct and allegedly retaliatory actions can establish a prima

10

facie case, it "can support a finding of pretext *only in combination with other evidence of pretext*." *Lobato*, 733 F.3d at 1293 (emphasis added). Here, there is no other evidence to show USPS's proffered reasons are a pretext for discrimination.[5]

### D.    Hostile Work Environment

Rodriguez also asserts he was subject to a hostile work environment. To defeat summary judgment, there must be evidence from which a jury could find (1) that his workplace was "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently severe or pervasive to alter the conditions of . . . employment and create an abusive working environment," and (2) that he "was targeted for harassment because of his race" or other protected characteristics. *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007).

The record contains no such evidence. To the extent Rodriguez maintains this claim, it is based on the same actions by USPS addressed above. No evidence shows use of offensive language or similar conduct suggesting Rodriguez was harassed based on a protected characteristic. He refers to one statement, that "[t]he actions management is taking, is making me believe, I should Work, Mexican, Work!" Aplt. Opening Br. at 4–5. This appears to refer to a statement Rodriguez made expressing his beliefs about managers' motivations. But his opinions do not defeat summary

---

[5] Rodriguez argues the district court confused his two EEO claims. We see no reversible error. The district court stated Rodriguez filed his second EEO complaint (USPS Case No. 4G-730-004-021) *after* his employment ended. But he actually filed that complaint after USPS notified him that his employment would be terminated but before the date later negotiated for his voluntary resignation. Nevertheless, these facts do not change our de novo review of the summary judgment analysis.

judgment. *See Ford*, 45 F.4th at 1222 (a plaintiff's "personal belief is insufficient to create an issue of material fact"). There is no other evidence of harassment tied to a protected characteristic. This claim therefore fails.

### E.     Other Issues Raised by Rodriguez

Rodriguez also attacks various aspects of USPS's conduct. He argues USPS relied on hearsay and false evidence and accuses it of document fraud, making false statements, violating the Privacy Act and improperly producing documents during his litigation with the customer involved in the July 2020 altercation. He argues workers' compensation proceedings related to his finger injury support his claims here. And he attached materials not included in the district court record to his brief on appeal. But Rodriguez did not present these arguments and additional evidence to the district court. And to the extent Rodriguez asserts claims other than those addressed above, they were not pled in his complaint. Therefore, we decline to address these newly raised arguments and claims. *See Utah Animal Rts. Coal. v. Salt Lake Cnty.*, 566 F.3d 1236, 1244 (10th Cir. 2009) ("[W]e generally do not consider new theories on appeal.").

## IV.    Conclusion

Because Rodriguez has not identified evidence sufficient to meet his burden in opposing summary judgment, we affirm the district court's judgment.

Entered for the Court


Nancy L. Moritz
Circuit Judge