FILED
United States Court of Appeals
Tenth Circuit

November 27, 2024

Christopher M. Wolpert
Clerk of Court

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

_____

HARRY GARCIA,

    Petitioner - Appellant,

v.

GENTNER DRUMMOND,

    Respondent - Appellee.

No. 24-6193
(D.C. No. 5:24-CV-00341-R)
(W.D. Okla.)

_____

## ORDER DENYING CERTIFICATE OF APPEALABILITY[*]

_____

Before **BACHARACH**, **McHUGH**, and **FEDERICO**, Circuit Judges.

_____

Petitioner Harry Garcia, a state prisoner in Oklahoma, seeks a certificate of

appealability ("COA") to challenge the district court's order dismissing his habeas corpus

petition under 28 U.S.C. § 2254. Mr. Garcia also moves for leave to proceed in forma

pauperis ("IFP"). For the reasons stated below, we deny Mr. Garcia a COA, grant his

motion to proceed IFP, and dismiss this matter.

### I.     BACKGROUND

This case stems from Mr. Garcia's 2014 first-degree murder conviction for the

stabbing death of Casey Wright. Most of the facts related to the murder conviction were

---

[*] This order is not binding precedent except under the doctrines of law of the case,
res judicata, and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

undisputed by Mr. Garcia on direct appeal. Namely, Mr. Garcia had been attempting to break up a fight between his nephews and two men—including Mr. Wright. Mr. Garcia retrieved a knife from his nearby apartment when it appeared one of his nephews was badly losing the fight to Mr. Wright. Mr. Garcia testified he retrieved the knife only to scare away the men, and that Mr. Wright continued to walk toward him while Mr. Garcia made a stabbing motion, which struck Mr. Wright. Mr. Garcia and his nephews fled the scene. Mr. Wright died of a single stab wound to the chest.

Mr. Garcia was charged with first-degree murder. During the trial, both Mr. Garcia and the prosecutor argued that a defense-of-person instruction should be given to the jury, but the trial court denied the instruction. The trial court also declined to instruct the jury on the lesser-included offense of second-degree murder. The jury ultimately convicted Mr. Garcia of first-degree murder.

Mr. Garcia lodged a direct appeal, arguing that the trial court erred in refusing to give a defense-of-person instruction, the evidence was insufficient to support his conviction, the refusal to instruct the jury on the lesser related offense of second-degree murder violated due process, and that cumulative trial errors warranted a new trial. On July 28, 2015, the Oklahoma Court of Criminal Appeals ("OCCA") affirmed the trial court in a summary opinion, concluding the evidence at trial did not support either a defense-of-person or second-degree murder instruction, the evidence presented supported the first-degree murder conviction, and there were "no errors, considered individually or cumulatively, that merit[ed] relief." ROA at 88.

2

Nearly nine years later, in April 2024, Mr. Garcia filed a motion for writ of habeas corpus under 28 U.S.C. § 2254. Mr. Garcia raised five arguments: (1) the trial court erred in refusing to give the jury a defense-of-person instruction, (2) there was insufficient evidence to support his first-degree murder conviction, (3) the trial court's failure to give a defense-of-person instruction violated due process, (4) cumulative trial errors warranted a new trial, and (5) Mr. Garcia received ineffective assistance of counsel ("IAC") based on trial counsel's failure to object after the trial judge refused to give a defense-of-person instruction and appellate counsel's failure to pursue an IAC argument on direct appeal.

As to the timeliness of his petition, Mr. Garcia argued the Oklahoma Department of Corrections ("ODOC") "created a plethora of serious and consequential impediments to the filing." ROA at 9. First, Mr. Garcia noted he has been transferred to seven different prisons within eight years, and each time his "legal documents and materials pertinent to filing any Habeas [petition] were confiscated and either never returned at all and/or the few times when returned, only a few torn pages [were] returned." *Id.* Second, he had been placed in administrative segregation at five of the seven prisons he had been housed in "for periods of time exceeding years," and during that time his "pertinent legal documents and materials" were taken and not returned. *Id.* at 10. Third, ODOC prison guards "stole [his] pertinent habeas legal documents and materials . . . stating variously 'Suing Us Huh?! This Will Stop That.'" *Id.* Mr. Garcia stated this occurred "dozens of times throughout every ODOC prison to which [he was] designated and transferred." *Id.* Fourth, "as ODOC records can show, [he] was medically and mentally unable to do the habeas work for . . . years." *Id.* Fifth, he argued his case was an "exceptional

3

circumstance[]" case because he was convicted of first-degree murder without a finding of mens rea. *Id.* Mr. Garcia attached to his petition the briefing from his direct appeal in Oklahoma and the summary opinion affirming the trial court's decision. Mr. Garcia did not attach any prison or medical records supporting the reasons he had been unable to file his petition within one year.

Mr. Garcia's case was referred to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). After reviewing Mr. Garcia's petition, the magistrate judge issued a Report and Recommendation recommending that his petition be dismissed as untimely filed.[1] The magistrate judge explained that under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, there is a one-year limitation period to bring a federal habeas petition which runs from the date a state conviction becomes final. For Mr. Garcia, the limitation period had expired in October 2016, making his petition nearly eight years late.

The magistrate judge next considered whether equitable tolling could apply to save Mr. Garcia's petition and concluded it could not. The magistrate judge held that Mr. Garcia's stated reasons for the petition's untimeliness—frequent moves, his papers being discarded, time in solitary confinement, medical problems—did not warrant equitable tolling because Mr. Garcia had not made a showing that he "diligently pursued his habeas claims and his confinement prevented him from filing on time." ROA at 101

---

[1] The magistrate judge screened Mr. Garcia's petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, which requires the district court to dismiss a habeas petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

(quoting *Green v. Kansas*, 190 F. App'x 682, 685 (10th Cir. 2006) (unpublished)). The magistrate judge further held that the actual innocence exception did not apply because Mr. Garcia did not support his claim with new evidence not presented at trial, rather, he argued that there was insufficient evidence at trial to convict him. The magistrate judge accordingly recommended the court dismiss Mr. Garcia's petition as untimely filed.

Mr. Garcia filed a timely objection, asserting he had pleaded exceptional circumstances based on the confiscation of his legal documents, and also moved the court to "[i]ssue subpoenas to ODOC to produce all legal property records (i.e. Confiscations)" as well as his medical and psychological records. ROA at 104. He also requested the court order a hearing on these factual issues. As to actual innocence, Mr. Garcia argued that his IAC arguments were raised for the first time in the habeas petition and thus constituted new evidence which would support a finding of actual innocence.

The district court adopted the magistrate judge's recommendation and dismissed Mr. Garcia's petition over his objection. The district court first held equitable tolling was not warranted because, despite Mr. Garcia's explanations for the delay, he "[did] not demonstrate that he was working diligently on his habeas application only to be frustrated by eight continuous years of extraordinary circumstances." ROA at 111–12. The district court further noted that while Mr. Garcia had requested subpoenas and an evidentiary hearing, it was within the court's discretion to hold such a hearing and that the evidence Mr. Garcia sought "would not support nearly eight years of equitable tolling." ROA at 112 (citing *Fisher v. Gibson*, 363 F.3d 1135, 1145 (10th Cir. 2001)). And as to actual innocence, the court agreed with the magistrate judge that Mr. Garcia had not presented

5

new evidence of actual innocence. The court accordingly denied the petition and a COA. Mr. Garcia then commenced this appeal.[2]

## II.    STANDARD OF REVIEW

To appeal the district court's denial of his § 2254 petition, Mr. Garcia must first obtain a COA, which is available only if Mr. Garcia can establish "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where, as here, the district court denies relief on procedural grounds, Mr. Garcia must demonstrate "both 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Gonzalez v. Thaler*, 565 U.S. 134, 140–41 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Slack*, 529 U.S. at 484.

Mr. Garcia proceeds pro se. We construe a pro se litigant's pleadings liberally, holding them to a "less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). At the same time, "this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern

---

[2] Because the district court dismissed Mr. Garcia's complaint before Respondents were served, Respondents did not appear in the district court litigation and have not entered an appearance in this court.

other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (quotation marks omitted). As such, "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record." *Kincaid v. Unified Sch. Dist. No. 500*, 94 F.4th 936, 947 (10th Cir. 2024) (quotation marks omitted).

## III.    DISCUSSION

To determine whether to grant a COA, we consider if reasonable jurists could debate whether the district court was correct in denying Mr. Garcia's motion as untimely. Because it is not debatable that the motion was untimely and that Mr. Garcia has not met his burden to show he has met the requirements for equitable tolling, we deny a COA. But we grant Mr. Garcia's motion to proceed IFP because his argument is not frivolous.

### *A.    COA*

We first discuss whether equitable tolling is merited based on extraordinary circumstances, and next consider whether equitable tolling is warranted due to a showing of actual innocence.

### 1.    Extraordinary Circumstances

#### a.    Legal Standards

Under AEDPA, motions brought under 28 U.S.C. § 2254 are subject to "[a] 1-year period of limitation," running from the latest of (1) "the date on which the judgment became final by the conclusion of direct review," (2) "the date on which the impediment to filing an application created by [unlawful] State action . . . is removed," (3) "the date on which the constitutional right asserted was initially recognized by the Supreme Court,

if the right has been newly recognized," or (4) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). Mr. Garcia does not dispute the district court's conclusion that the limitations period in his case ran from the date the judgment in his case became final.

The one-year limitations period begins to run the day after a conviction is final, and per the "anniversary method" of calculating the AEDPA limitations period, the last day to file is the one-year anniversary of that date. *United States v. Hurst*, 322 F.3d 1256, 1260 (10th Cir. 2003). Mr. Garcia's judgment became final on October 26, 2015, ninety days after the OCCA upheld the trial court's judgment and when his time to file a writ of certiorari expired. *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001). Therefore, the one-year period of limitations began to run on October 27, 2015. *See Hurst*, 322 F.3d at 1261–62. Under the anniversary rule, Mr. Garcia had until October 27, 2016 to file a timely petition.

If a petitioner brings a § 2554 motion beyond the one-year statute of limitations, then the motion is barred unless the district court grants equitable tolling of the statute of limitations. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). "Equitable tolling of the limitations period is available when [1] an inmate diligently pursues his claims and [2] demonstrates that the failure to timely file was caused by extraordinary circumstances beyond his control." *United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008) (internal quotation marks omitted). "Equitable tolling is a rare remedy to be applied in unusual circumstances" and requires showing both elements—extraordinary

8

circumstances and due diligence. *Yang*, 525 F.3d at 928, 929 (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007)). Moreover, a petitioner "bears a strong burden to show *specific facts* to support his claim of extraordinary circumstances and due diligence." *Id.* at 928 (emphasis added) (quoting *Brown v. Barrow*, 512 F.3d 1304, 1307 (11th Cir. 2008)). We review the district court's decision of whether to apply equitable tolling for abuse of discretion. *Gabaldon*, 522 F.3d at 1124.

b.      *Analysis*

Mr. Garcia argues he should be granted a COA because he made a "sufficient showing" of facts demonstrating "extraordinary circumstances beyond his control," namely, "hundreds of instances of legal work documentations taken by ODOC prison guards and prison executives—never to be returned." Appellant's Br. at 1. He further argues the district court erred in not issuing a subpoena or holding an evidentiary hearing regarding his allegations of extraordinary circumstances. Mr. Garcia argues that the case law relied on by the magistrate judge about transfers is factually distinguishable because his situation is based on the "cumulative[]" effects of "8 transfers in 8 years," "[y]ears of hole time,"[3] "hundreds" of instances of his work product being stolen, and "[m]ental health matters of serious nature." Appellant's Br. at 5.[4]

---

[3] "Hole time" refers to administrative segregation.

[4] Mr. Garcia also presses his IAC argument in this court, *see* Appellant's Br. at 6–7, but because we decline to issue a COA on the procedural basis of untimeliness, we do not reach the merits of Mr. Garcia's petition.

In *Gabaldon*, we held equitable tolling was merited following the confiscation of the petitioner's legal materials because the petitioner had shown the existence of both extraordinary circumstances and due diligence. 522 F.3d at 1125–26. As to extraordinary circumstances, six weeks before the petitioner's habeas petition was due, he was placed in solitary confinement, his nearly completed petition was confiscated, and he filed the motion as soon as he was able after leaving solitary confinement, thirty-six days past the deadline. *Id.* at 1123–24. As to due diligence, the petitioner had "detailed the numerous actions he took in preparing his § 2255 motion," submitted affidavits under penalty of perjury detailing his numerous requests to prison officials to get the materials back, and demonstrated that he likely "would have met the one-year deadline had prison officials not seized his materials." *Id.* at 1126.

But in many other cases, we have denied equitable tolling based on the confiscation of legal materials where the petitioner failed to meet the "strong burden to show specific facts" demonstrating "that he has been pursuing his rights diligently." *Yang*, 525 F.3d at 928 (quotation marks omitted). For example, when a petitioner alleged that he had been in lockdown for ten years without access to legal materials, equitable tolling was not appropriate because the petitioner did not "allege with specificity the facts he took to diligently pursue his federal claims" during that ten-year period. *Stovall v. Chaptelain*, 660 F. App'x 674, 677 (10th Cir. 2016) (internal quotation marks omitted) (unpublished). So too with a petitioner who alleged that he spent two months on lockdown "without access to a law library," where his petition did not identify specific facts illustrating he had "diligently pursued his claim" despite the lockdown. *United*

*States v. Martinez*, 303 F. App'x 590, 594–95 (10th Cir. 2008) (unpublished); *see also, e.g.*, *Phares v. Jones*, 470 F. App'x 718, 719–20 (10th Cir. 2012) (unpublished) (holding a combination of head injury, administrative segregation, and lockdown not sufficient to warrant equitable tolling where the petitioner offered "no evidence or allegation that he took action on his petition" before the limitations period expired); *United States v. Orecchio*, No. 21-6172, 2022 WL 2062440, at *2 (10th Cir. June 8, 2022) (unpublished) (holding the petitioner did not meet burden to justify equitable tolling for one-year late habeas petition where petitioner did not "include specific facts showing that the inability to access his own case materials prevented him from bringing a timely motion"); *United States v. Hamett*, No. 24-5017, 2024 WL 3084971, at *2 (10th Cir. June 21, 2024) (unpublished) (holding equitable tolling not available where the petitioner failed to allege specific steps he took to attempt to mail petition prior to deadline despite alleging the motion was ready three months early).

We have also previously stated that "[a] prisoner's confinement in administrative segregation may qualify as an extraordinary circumstance beyond his control," but also that equitable tolling is justified in such a circumstance "only where the prisoner has shown that despite his segregated confinement he diligently pursued his habeas claims and his confinement prevented him from filing on time." *Green*, 190 F. App'x at 684–85. In *Green*, we held equitable tolling was not available because "[n]owhere [did the petitioner] claim that he was denied access to legal materials because of his confinement," rather, the petitioner asserted only that "acquiring legal materials was slow and unwieldy and perhaps subject to the caprice of unfriendly staff." *Id.* Moreover, the

11

petitioner did not explain why it "took nearly six years after his conviction became final to pursue his state habeas claims." *Id.* Similarly, we have denied equitable tolling based on "the possibility that [the petitioner's] medical or mental condition prevented him from pursuing such relief" where the petitioner provided "no medical records or other evidence . . . to confirm his assertion of incapacity over a period spanning more than ten years." *United States v. Buckaloo*, 257 F. App'x 88, 90 (10th Cir. 2007) (unpublished).

Mr. Garcia's case closely resembles these numerous examples in which petitioners failed to demonstrate equitable tolling was warranted. Assuming without deciding that Mr. Garcia has shown the existence of "extraordinary circumstances" based on eight different prison transfers, time spent in administrative segregation, and several instances of prison guards confiscating his materials, Mr. Garcia has not offered any evidence showing that he pursued his claims with the required diligence during the eight-year period after the limitations period expired. In *Gabaldon*, the petitioner detailed the actions he took to prepare his habeas petition during the one-year limitations period, presented a statement under penalty of perjury asserting he made multiple requests that his documents be returned before the deadline, a statement from his cellmate asserting the same, and provided copies of written requests he had submitted to prison staff seeking the return of his documents. 522 F.3d at 1126–27. But here, while Mr. Garcia has detailed the numerous obstacles presented by prison officials to preparing a habeas petition, he has not alleged any specific actions that he took to prepare a habeas petition during the approximately eight years between when the limitations period began to run and when he filed his petition. In the absence of any facts demonstrating that Mr. Garcia diligently

12

pursued his claims, we cannot conclude that he "pursue[d] his claims with the required diligence" necessary to qualify for equitable tolling. *Id.* at 1126. The district court did not abuse its discretion in determining equitable tolling was not merited.[5]

## 2.     Actual Innocence

"Equitable tolling would be appropriate . . . where a prisoner is actually innocent." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000); *see also Doe v. Jones*, 762 F.3d 1174, 1183 (10th Cir. 2014) ("[A] 'credible showing of actual innocence' provides an outright equitable exception to AEDPA's statute of limitations." (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013))). "To qualify for the actual innocence exception . . . 'the petitioner must show that it is more likely than not that no reasonable juror would have convicted him *in the light of new evidence.*'" *Taylor v. Powell*, 7 F.4th 920, 927 (10th Cir. 2021) (emphasis added) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). That is, "[a]n actual innocence claim must be based on more than the petitioner's speculations and conjectures." *Id.* The claim requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *House v. Bell*, 547 U.S. 518, 537 (2006) (quoting *Schlup*, 513 U.S. at 324). Evidence is "new" if it "was not considered by the fact-finder in the original proceedings." *Taylor*, 7 F.4th at 927.

---

[5] Similarly, the district court did not err in declining to issue subpoenas or hold a hearing concerning the actions of ODOC in terms of confiscating his materials or his health records, because establishing those facts would not explain what steps, if any, Mr. Garcia took to diligently pursue his habeas claims.

Here, Mr. Garcia acknowledges that actual innocence cases tend to involve new evidence such as DNA test comparisons or post-trial recantations but asserts he has shown "actual innocence of the charge" based on trial testimony indicating that family members were nearby the altercation and the fact the prosecutor also sought a defense of others instruction. Appellant's Br. at 8–9.

The district court correctly determined that Mr. Garcia has failed to present any new evidence in support of his actual innocence claim. Indeed, Mr. Garcia emphasizes only the trial evidence and the prosecution's request for a defense-of-others instruction in arguing for the actual innocence exception on appeal. In the absence of any new evidence, we cannot say that Mr. Garcia has shown "it is more likely than not that no reasonable juror would have convicted him in the light of new evidence." *Schlup*, 513 U.S. at 327.

## 3.    Conclusion

Because Mr. Garcia has not demonstrated that he pursued his claims with "reasonable diligence" during the eight years after the limitations period expired, and he has not identified any new evidence in support of an actual evidence claim, equitable tolling is not warranted and his § 2254 petition is untimely. The district court did not err in dismissing the petition.

### *B.    IFP*

Finally, we turn to Mr. Garcia's motion to proceed IFP. *See* Fed. R. App. P. 24(a)(5). To proceed IFP, Mr. Garcia must present "a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *DeBardeleben v. Quinlan*,

14

937 F.2d 502, 505 (10th Cir. 1991). An argument "is frivolous when the result is obvious, or the appellant's arguments . . . are wholly without merit." *Ford v. Pryor*, 552 F.3d 1174, 1180 (10th Cir. 2008) (quotation marks omitted).

Mr. Garcia argues the district court erred in denying his § 2554 motion because he made a sufficient showing of extraordinary circumstances out of his control, including having his legal work taken by prison guards, time in solitary confinement, and medical issues. As discussed above, this circuit has held a lack of legal materials can constitute an extraordinary circumstance that could justify equitable tolling, *Gabaldon*, 522 F.3d at 1125–26, and that confinement in administrative segregation may qualify as an extraordinary circumstance, *Green*, 190 F. App'x at 685–86. Although Mr. Garcia did not plead specific enough facts as to why confiscation of his legal materials and confinement in administrative segregation prevented him from bringing a timely motion for eight years, his argument is not "wholly without merit." *Ford*, 552 F.3d at 1180; *see also Yang*, 525 F.3d at 931 n.10 (holding unsuccessful argument was not frivolous in part where "general authority" supported the petitioner's position). Mr. Garcia has also shown that he does not have the financial ability to pay the filing fees with his financial declaration. Therefore, we grant Mr. Garcia's motion to proceed IFP.

15

## IV.    CONCLUSION

For the reasons stated above, we DENY Mr. Garcia's request for a COA and DISMISS this matter. We also GRANT his motion to proceed IFP.

Entered for the Court


Carolyn B. McHugh
Circuit Judge